IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| HARMONY HAUS WESTLAKE, L.L.C., LING ZHOU, and FENGLIN DU, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 1:20-cv-00486 |
| PARKSTONE PROPERTY OWNERS ASSOCIATION, INC., | § § § | |
| Defendant. | § § § | |

## **PLAINTIFFS' RESPONSE TO DEFENDANT'S 12(b) MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ................................................................................................... ii

I.     STANDARD OF REVIEW ............................................................................................. 1

II.     FACTUAL ALLEGATIONS ......................................................................................... 1

III.     ARGUMENT ................................................................................................................ 7

     A.     Plaintiffs State a Viable Claim under 42 U.S.C. § 3604(f)(1) and Have Standing To Pursue It. ..................................................................................................................... 9

     B.     Plaintiffs State a Viable Claim Under 42 U.S.C. § 3604(f)(2) ..................................... 12

     C.     Plaintiffs State a Viable Claim Under 42 U.S.C. § 3604(f)(3)(B) ................................ 15

     D.     Plaintiffs State a Viable Claim Under 42 U.S.C. § 3617 .............................................. 18

III.     CONCLUSION ............................................................................................................. 19

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)……………………………………………………………………..15

*Avalon Residential Care Homes, Inc. v. City of Dallas*,
130 F. Supp. 2d 833 (N.D. Tex. 2000)…………………………………………………..10

*Avalon Residential Care Homes, Inc. v. GE Fin. Assur. Co.*,
2002 WL 32359947 (N.D. Tex. Oct. 18, 2002)……………………………….…………11

*Bragdon v. Abbott*,
524 U.S. 624 (1998)………………………………………………………………………..2

*Caron Foundation of Florida, Inc.*, *v. City of Delray Beach*,
879 F. Supp. 2d 1353 (S.D. Fla. 2012)…………………………………………....9, 11, 13

*Castillo Condo. Ass'n v. United States HUD*,
821 F.3d 92 (1st Cir. 2016)………………………………….………………………...12

*Chavez v. Aber*,
122 F. Supp. 3d 581 (W.D. Tex. 2015)………………………………………………..17

*Cox v. Phase III, Invs.*,
2013 U.S. Dist. LEXIS 85725 (S.D. Tex. May 14, 2013)………………………………18

*Deutsch v. Travis Cty. Shoe Hosp., Inc.*,
721 Fed. Appx. 336 (5th Cir. 2018)……………………………………………...…18

*Developmental Services of NE v. City of Lincoln*,
504 F. Supp. 2d 714 (D. Neb. 2007)……………………………………………………16

*Fair Hous. Council, Inc. v. VIII. of Olde St. Andrews*,
210 Fed. Appx. 469 (6th Cir. 2006)…………………………………………………...11

*Kovac v. Wray*,
363 F. Supp. 3d 721 (N.D. Tex. 2019)……………………………………………....1

*Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Tp. of Scotch Plains*,
284 F.3d 442 (3d Cir. 2002)……………………………………………………………..16

*Martinez v. Optimus Props., LLC*,
2018 U.S. Dist. LEXIS 228573 (C.D. Cal. June 6, 2018)………………………………14

*Michigan Protec. and Advoc. Serv., Inc. v. Babin*,
799 F. Supp. 695 (E.D. Mich. 1992)……………………………………………………..11

*Olmstead v. L.C. ex rel. Zimring*,
527 U.S. 581 (1999)………………………………………………………………………...13

*Oxford House, Inc. v. Browning*,
266 F. Supp. 3d 896 (M.D. La. 2017)………………………………………………………16

*Pac. Shores Props., LLC v. City of Newport Beach*,
730 F.3d 1142 (9th Cir. 2013)…………………………………………………………......13

*Petty v. Portofino Council of Coowners, Inc.*,
702 F. Supp. 2d 721 (S.D. Tex. 2010)……………………………………………………...12

*PSI, LLC v. Nautilus Ins. Co.*,
2014 U.S. Dist. LEXIS 178803 (D. Mass. Dec. 30, 2014)…………………………….9, 11

*Shakeri v. ADT Sec. Services, Inc.*,
816 F.3d 283 (5th Cir. 2016)……………………………………...…………………………1

*SoCal Recovery, LLC v. City of Costa Mesa*,
2019 U.S. Dist. LEXIS 228886 (C.D. Cal. Aug. 30, 2019)………………………………..14

*Turner v. Pleasant*,
663 F.3d 770 (5th Cir. 2011)………………………………………………………………..1

*United States v. City of Jackson, Miss.*,
318 F. Supp. 2d 395 (S.D. Miss. 2002)……………………………………………………..15

*United States v. City of Jackson, Miss.*,
359 F.3d 727 (5th Cir. 2004)……………………………………………………………….15

*Yellowstone Womens First Step House, Inc. v. City of Costa Mesa*,
2016 U.S. Dist. LEXIS 189697 (C.D. Cal. Oct. 17, 2016)…………………………………14

**Rules and Statutes**

Fed. R. Civ. P. 12(b)(1)……………………………………………………………………..1

Fed. R. Civ. P. 12(b)(6)……………………………………………………………………..1

Tex. Property Code § 209…………………………………………………………………..18

42 U.S.C. § 3604(f)(1)……………………………………………………………..9, 10, 11, 12

42 U.S.C. § 3604(f)(2)……………………………………………………………..12

42 U.S.C. § 3604(f)(3)(B)……………………………………………….………..7

42 U.S.C. § 3617……………………………………………………………………18

Plaintiffs Harmony Haus Westlake, L.L.C. ("Harmony Haus"), Ling Zhou, and Fenglin Du hereby submit their Plaintiffs' Response to Defendant's 12(b) Motion to Dismiss the First Amended Complaint (the "Motion") and would respectfully show the Court as follows:

## I.     STANDARD OF REVIEW

Dismissal under Fed. R. Civ. P. 12(b)(6) is only appropriate when the "plaintiff has not alleged enough facts to state a claim to relief that is plausible on its face and has failed to raise a right to relief above the speculative level." *Shakeri v. ADT Sec. Services, Inc.*, 816 F.3d 283, 290 (5th Cir. 2016) (citations and internal quotation marks omitted). Furthermore, in evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court "must construe facts in the light most favorable to the nonmoving party, as a motion to dismiss under 12(b)(6) is viewed with disfavor and rarely granted." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citations and internal quotation marks omitted). "[U]nlike a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court [in evaluating a Rule 12(b)(1) motion to dismiss] is entitled to consider disputed facts as well as undisputed facts in the record and make findings of fact related to the jurisdictional issue. All factual allegations of the complaint, however, must be accepted as true." *Kovac v. Wray*, 363 F. Supp. 3d 721, 738-9 (N.D. Tex. 2019) (citations omitted). This Court should deny Defendant's Motion upon application of these standards.

## II.     FACTUAL ALLEGATIONS

Plaintiff Harmony Haus operates integrative transitional sober living residences in the Hyde Park and Westlake areas of Austin, Texas. *See, e.g.*, *Harmony Haus Westlake, LLC v. Parkstone Property Owners Association, Inc.*, No. 1:19-cv-01034-XR, Findings of Fact and Conclusions of Law, Dkt. No. 29 (Feb. 18, 2020) ("FOFCOL"), at ¶ FOF.I.3. Specifically, it operates such a residence at 2105 Real Catorce Drive, Austin, Texas 78746 (the "Residence"). *See id*. As individuals recovering from drug addiction, the residents of the Residence (the

"Residents") are qualified persons with a disability under the federal Fair Housing Act ("FHA").[1] *See* FOFCOL, at ¶¶ COL.II.6-8. The Residence is located within the homeowners' association operated by Defendant Parkstone Property Owners Association, Inc. (the "Parkstone POA"). *See id.*, at ¶¶ FOF.1.2-1.4. Ling Zhou and Fenglin Du own the Residence. *See id.*, at ¶ FOF.1.4.

On October 22, 2019, Plaintiffs filed a complaint in this Court in Cause No. 1:19-cv-01034, complaining, among other things, that Defendant had discriminated against them by refusing to grant them a reasonable accommodation from the restrictive covenants, regulations, and/or rules which would impede its operation and have the effect of denying the disabled Residents equal access to housing of their choice in the community. In particular, Defendant refused to allow twelve unrelated individuals to reside at the Residence. After a January 2020 bench trial, this Court issued Findings of Fact and Conclusions of Law and a final judgment on February 18, 2020, determining that Defendant's actions in this regard were indeed discriminatory and enjoining Defendant from refusing to allow twelve unrelated individuals to reside at the Residence.

On March 3, 2020, exactly two weeks after this Court issued its final judgment in the above-referenced matter, Defendant voted to enact newly revised restrictive covenants. *See* Plaintiffs' First Amended Complaint ("FAC"), at ¶ 22. Included among these revised covenants was a set of new traffic and parking rules, including a new enforcement scheme with escalating fine structures. *Id.* The timing and nature of these revisions strongly suggests that the Parkstone POA imposed these new rules and enforcement schemes for the specific purpose of targeting

_____

[1] The FHA uses the term "handicap" instead of the term "disability." Both terms have the same legal meaning. *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998) (noting that definition of "disability" in the Americans with Disabilities Act is drawn almost verbatim "from the definition of 'handicap' contained in the Fair Housing Amendments Act of 1988").

Plaintiffs and individuals with disabilities in general. *Id.* After all, prior to this Court's issuance of its final judgment, the Parkstone POA had made little if any effort to enforce its existing parking restrictions, such that its post-judgment enforcement efforts clearly arose as a response to the judgment. *Id.* The animus and intentionality of the Parkstone POA in this regard are further evidenced by a provision in the new set of restrictive covenants that preemptively disallowed any reasonable accommodation request with respect to the single family use restriction under the federal Fair Housing Act for any residence within 1000 feet of the Residence. *Id.* This illegal provision prevents any other individuals with disabilities from availing themselves of their rights under the federal Fair Housing Act in the area, regardless of the nature of their disabilities or the number of individuals involved. *Id.* Defendant's inclusion of such a provision in the restrictive covenants makes it unmistakable that the Parkstone POA's revision of the restrictive covenants was undertaken to target Plaintiffs and individuals with disabilities in general, as after all the provision covers any individuals with disabilities and not merely those with Substance Use Disorder. *Id.* These facts belie any suggestion by the Parkstone POA that their concerns actually revolve around traffic and parking considerations as many group homes for the disabled would trigger no such concerns, but yet are prohibited nonetheless by the new deed restrictions. *Id.*

Almost immediately, Defendant began sending violation notices to Plaintiffs, complaining of, among other things, violations of parking restrictions that prohibit parking in the street for more than twelve hours at a time. *See* FAC, at ¶ 23. As of the last of these notices, dated May 17, 2020, Defendant had assessed fines totaling at least $23,650.00, with an escalating fee structure. *See id.* Although Defendant has claimed that it is now enforcing these restrictions with respect to others in the neighborhood as well, Defendant appears to engage in

this practice for the sole purpose of allowing it to target Plaintiffs with hoped-for impunity. *See id*. On information and belief, many of the alleged violations were not violations at all. *See id*.

On March 24, 2020, as a result of the current coronavirus health crisis, the City of Austin issued a shelter-in-place order requiring that "all individuals currently living within the City of Austin shelter at their place of residence except as allowed by [the] Order." *See* FAC, at ¶ 24. In light of this order, the Residents could not go to work or engage in any other activity outside the residence, unless that work or other activity met the conditions specified in the order. *See id*. Consequently, except when certain residents had grounds for leaving the Residence that qualified as permissible under the order, they could not take any measures to move their vehicles elsewhere for purposes of complying with Defendant's parking restrictions. *See id*. Under the shelter-in-place order, even all travel of any kind was prohibited, except for essential travel as specified under the order. *See id*. Although it was originally set to expire on April 13, 2020, the order was later extended until May 8, 2020. *See id*. Due to the actions of the Governor of Texas, however, the order apparently expired on May 1, 2020. *See id*.

Despite the expiration of the shelter-in-place order in the City of Austin, many businesses remain closed, including businesses owned by or employing a number of the Residents. *See* FAC, ¶ 25. Also, many of the Residents have had to take contract work in their respective professions because of the current health crisis, as opposed to seeking regular employment in a standard office setting, and must therefore continue to pursue such activities in the home until such time as they are able to pursue regular employment. *See id*.

Several current Residents have compromised immune systems which make them both more vulnerable to COVID-19 and more susceptible to its potentially lethal impact. *See* FAC, ¶ 26. Such individuals continue to need to shelter in place for their own safety, regardless of the

fact that the City of Austin no longer has a formal shelter-in-place order in effect. *See id*. After all, the substantial risk of infection continues. *See id*

Reports indicate that, even if the current health crisis abates somewhat during the summer months—an event which is not yet certain to occur—an even stronger and deadlier wave of COVID-19 may sweep the city, the state, and the nation in the fall. *See* FAC, ¶ 27. Consequently, the current health crisis is unlikely to end in the near future. *See id*.

On March 31, 2020, Plaintiffs requested a reasonable accommodation from Defendant requesting that it waive the parking restrictions during the pendency of the shelter-in-place order in Austin. *See* FAC, ¶ 28. Defendant countered with an offer to allow four vehicles to park on the street during the pendency of the order, but only if the driveway and garage were fully utilized at all times. *See id*. Plaintiffs cannot (1) keep eight vehicles in the driveway and garage in any event, or (2) move all the vehicles in and out of the driveway every time a resident has to leave. *See id*. Pictures of the driveway and street support this conclusion. *See id*. As an initial matter, residents are in many cases working from home or taking meetings and the like and cannot rush outside to move cars around at any given moment. *See id*. Secondly, during the course of the preceding litigation between the parties, Defendant put forward as a partial basis for its resistance to Plaintiffs' intended use of the Residence that the Residents made too much noise in moving their vehicles in and out of the driveway. *See id*. Plaintiff Harmony Haus would literally have to close the Residence if it either (1) had to keep eight cars in the garage and driveway, which would prove completely unmanageable, or (2) had to pay fines for every alleged violation based on its inability to keep eight cars in the garage and driveway. *See id*.

Plaintiffs Ling Zhou and Fenglin Du are actively seeking to sell the Residence. *See* FAC, ¶ 29. The fines referenced above are accumulating in their account with the Parkstone POA,

rendering it impossible to sell the Residence.  *See id*.  Without relief from this Court, their inability to sell the Residence will continue unabated.  *See id*.

Defendant has refused to provide any evidence as to the basis for its allegations of alleged violations, despite multiple requests by Plaintiffs, thereby effectively forcing Defendant to litigate this issue.  *See* FAC, ¶ 30.  After all, Plaintiffs cannot even determine at what dates or times Defendant alleges these violations to have occurred or what vehicles Defendant alleges to have been involved in these violations.  *See id*.  Coupled with facially discriminatory remarks made by members of Defendant's Board to Plaintiffs and the Residents, including a barrage of profanity on multiple occasions, such actions further indicate animus against Plaintiffs and the disabled individuals they serve.  *See* FAC, ¶ 31.

In its Motion, Defendant mischaracterizes both Plaintiffs' allegations and the factual background.  First, Defendant claims that this Court already issued a holding that embraces the current circumstances.  Motion, at 1-2.  On the contrary, the Court's prior decision merely declined to grant Plaintiffs a reasonable accommodation with respect to the restrictive covenants existing at the time of and made an issue by Plaintiffs' complaint in the earlier litigation.  It did not give the Parkstone POA license to enact new restrictive covenants for the purpose of targeting Plaintiffs and rendering it more difficult for them to operate the Residence.  It also did not foreclose the possibility of Plaintiffs requesting reasonable accommodations in the face of changed circumstances.

Second, Defendant claims that "Harmony Haus continues to admit, even in its First Amended Complaint, that almost immediately after the Judgment was entered it began violating

the Declaration with respect to parking." Motion, at 2. Far from admitting anything of the kind,[2] Harmony Haus maintains and has always maintained (*see* FOFCOL, at ¶ FOF.III.6) that it needs to have six vehicles in the street under the best of circumstances and that, with six vehicles in the street, it can comply with the twelve-hour parking rule contained in the relevant deed restrictions under normal circumstances. However, these are not normal circumstances. As explained above, the current health crisis has brought unexpected impediments to the ability of the Residents to carry on business as usual outside the Residence or even to leave the Residence at all in the way they ordinarily would. When the health crisis is resolved at least to a greater extent than is currently the case, such impediments will no longer exist and Plaintiffs will no longer need the accommodation they now request.

### III.    ARGUMENT

Under the federal Fair Housing Act, 42 U.S.C. § 3604(f)(3)(B), it is unlawful "[t]o refuse to make reasonable accommodations in land use and zoning policies and procedures where such accommodations may be necessary to afford persons or groups of persons with disabilities an equal opportunity to use and enjoy a dwelling." As the United States Congress has expressly recognized, the Fair Housing Act "is intended to prohibit the application of special requirements through land use regulations, restrictive covenants, and conditional or special use permits that have the effect of limiting the ability of [disabled] individuals to live in the residence of their choice in the community." H.R. Rep. No. 711, 100th Cong., 2d Sess., reprinted in U.S.C.C.A.N. 2173, 2185 (1988). Plaintiffs here complain of actions and omissions by Defendant that have the effect of limiting the ability of the Residents of the sober living residence at issue to live in the

---

[2] Defendant cites FAC, ¶ 6, as constituting such an "admission." However, that paragraph merely alleges that Defendant began issuing notices complaining of violations, not that such complaints had any foundation in fact.

residence of their choice in the community. Defendant has not only failed to make reasonable accommodations necessary to allow individuals with disabilities to continue to reside at the Residence, but it has specifically and intentionally targeted Plaintiffs and the Residents they serve.

First, almost immediately after this Court issued its Findings of Fact and Conclusions of Law in February of 2020, Defendant created new deed restrictions for the purpose of targeting Plaintiffs and making it more difficult for them to operate the sober living residence at issue. As explained in Section II above, Defendant (1) created new deed restrictions and enforcement provisions with escalating fine provisions which make such restrictions fatal to the operations of the sober living residence during times of health crisis, like the present, in which the Residents cannot leave for standard employment and recovery reasons, (2) immediately began imposing fines on Plaintiffs in a manner calculated to inflict maximum hardship on them during a time in which they could not reasonably avoid such hardship, and (3) refused to provide any evidence or information about the alleged violations so that Plaintiffs could determine if the alleged violations had factual basis and, if so, what steps, if any, they could conceivably take to avoid repetition.

Second, Defendant refused to grant a reasonable accommodation to Plaintiffs with respect to parking restrictions during the COVID-19 crisis when Plaintiffs could not both continue to operate the sober living residence and comply with the parking restrictions. Defendant offered an alternative accommodation of allowing four vehicles in the street when the driveway and garage were fully utilized, but Plaintiffs have always asserted, including in sworn trial testimony, that they must have six vehicles in the street. *See* FOFCOL, at ¶ FOF.III.6. Ordinarily, that would not constitute a violation of any deed restrictions. However, under current

circumstances, with their places of work and recovery closed, such that they must work for the present time at home, the Residents do not and cannot leave the Residence with the regularity that they would under usual circumstances.  Thus, it is both reasonable and necessary for them to have the ability for temporary purposes only to park longer than twelve hours on the street.

Defendant's actions and omissions, as Plaintiffs have alleged, threaten to force Plaintiffs to close the Residence.  *See* FAC, ¶ 28.  As explained above, they cannot move their cars throughout the day under current circumstances.  If Plaintiffs must pay fines on an escalating fine structure under such circumstances, they will have to close the Residence.  *See* FAC, ¶ 28.  Furthermore, as long as these fines continue to accumulate, Plaintiffs Ling Zhou and Fenglin Du cannot sell the Residence, as it is their current intention to do.  *See* FAC, ¶ 29.  Plaintiffs have adequately alleged both discrimination and resultant harm, both in terms of preventing disabled individuals from using and enjoying the housing of their choice and also in terms of frustrating the mission of Harmony Haus in providing them such housing.  *See, e.g.*, *Caron Foundation of Florida, Inc.*, *v. City of Delray Beach*, 879 F. Supp. 2d 1353, 1373 (S.D. Fla. 2012) ("Frustration of a rehabilitation provider's mission can cause irreparable harm."); *PSI, LLC v. Nautilus Ins. Co.*, 2014 U.S. Dist. LEXIS 178803, *6 (D. Mass. Dec. 30, 2014) (citing numerous cases for the proposition that FHA violations cause landlords and operators of group homes harm through the frustration of their respective missions).

### A. Plaintiffs State a Viable Claim under 42 U.S.C. § 3604(f)(1) and Have Standing To Pursue It.

Defendant first contends that Plaintiffs have not alleged a viable claim under 42 U.S.C. § 3604(f)(1) because it has not "allege[d] some conduct that made housing unavailable" and have no standing to pursue such a claim.  Motion, at 3-5.  Defendant incorrectly continues to assume,

despite Plaintiffs' direct demonstration to the contrary,[3] that Plaintiffs base this claim on Defendant's facially illegal creation of a new deed restriction that prohibits any request for a reasonable accommodation to the single family residential use restriction within 1000 feet of a residence to which such an accommodation has been granted.[4]  However, this new deed restriction is not the basis of Plaintiffs' claim under 42 U.S.C. § 3604(f)(1).  Rather, Plaintiffs base their claim under this statutory provision on the fact that Defendant has intentionally targeted Plaintiffs with its new fines and enforcement scheme and has refused to grant a reasonable accommodation during the current health crisis.  *See* Section II above.  As Plaintiffs allege, they will have to close the Residence in the absence of such an accommodation as they have no ability to move the cars in a manner that would fully comply with the parking restrictions under current circumstances and cannot operate the Residence with such fines continuing to escalate.  *See* Section II above.  Thus, Defendant's actions will render the Residence unavailable both to its current Residents and to individuals with disabilities who would choose to live at the Residence in the future.[5]

---

[3] Defendant absurdly refers to Plaintiffs' clarification as a "pivot" (Motion, at 5), despite the fact that Plaintiffs never made the straw-person argument to which Defendant's contentions are primarily directed.

[4] Defendant claims that this provision is not facially illegal, citing *Avalon Residential Care Homes, Inc. v. City of Dallas*, 130 F. Supp. 2d 833, 840 (N.D. Tex. 2000).  Motion, at 4.  However, nothing in *Avalon Residential Care Homes*.addressed the issue of an association seeking to foreclose the possibility of requesting a reasonable accommodation from a restriction or ordinance.  Defendant's argument here that Plaintiffs could simply request a reasonable accommodation from the prohibition against requesting a reasonable accommodation is nonsensical.

[5] Defendant argues merely that it has made access to the housing more difficult or less convenient.  Motion, at 5.  On the contrary, by forcing Harmony Haus to close the Residence, it makes it altogether unavailable.  As discussed above, at the motion to dismiss stage, the Court must accept Plaintiffs' factual allegations as true.

The statutory provision at issue, 42 U.S.C. § 3604(f)(1), operates as a catch-all provision to cover all manner of discriminatory mechanisms designed to exclude individuals with disabilities that are not specified elsewhere in the statutory scheme. *See, e.g.*, *Fair Hous. Council, Inc. v. VIII. of Olde St. Andrews*, 210 Fed. Appx. 469, 481 (6th Cir. 2006) ("Therefore, the language appearing in 42 U.S.C. § 3604(f)(1) . . . serves as a catch-all provision to cover other ways that an individual may make housing unavailable to the disabled beyond the forms of discrimination listed in 42 U.S.C. § 3604(f)(3)(C).") Plaintiffs state a viable claim, particularly in that they allege that Defendant is taking discriminatory actions that will force them to close the Residence under current circumstances in part through the enactment of a new aggressive fine enforcement scheme designed to target Plaintiffs and the Residents. *See, e.g.*, *Caron Foundation of Florida, Inc.*, 879 F. Supp. 2d at 1368-9 (holding that the adoption of new policies and procedures to prevent sober living residences from continuing to operate in a residential area pointed to intentional discrimination). Plaintiffs have standing to assert such a claim. *See, e.g.*, *Caron Foundation of Florida, Inc.*, 879 F. Supp. 2d at 1373; *PSI, LLC v. Nautilus Ins. Co.*, 2014 U.S. Dist. LEXIS 178803, *6.

In its additional briefing, which it oddly attaches as an exhibit to its Motion, Defendant argues that its actions only indirectly make housing unavailable to Plaintiffs (citing *Michigan Protec. and Advoc. Serv., Inc. v. Babin*, 799 F. Supp. 695, 713-14 (E.D. Mich. 1992), and *Avalon Residential Care Homes, Inc. v. GE Fin. Assur. Co.*, 2002 WL 32359947 (N.D. Tex. Oct. 18, 2002)). However, these cases do not support Defendant's contentions. In *Babin*, the court understood that the scope of 42 U.S.C. § 3604(f)(1) extends to "individuals who are in a position to make a dwelling unavailable [or, in other words,] to exercise influence over or control the disposition of the dwelling." *Babin*, 799 F. Supp. at 711. Here, Defendant exercised influence

over the disposition of the dwelling. Plaintiffs allege that, by imposing an accelerating fine structure, Defendant has specifically targeted them and has placed them in a position in which they will have no choice but to close the Residence. FAC, ¶ 28. As a homeowners' association with the entire neighborhood as its purview, Defendant has such mechanisms at its disposal and has here used those mechanisms to control the disposition of the dwelling at issue. Likewise, in *Avalon Residential Care Homes, Inc.*, the refusal of an insurer to pay for a group home had no effect at all on the status of the group home itself. Here, however, the actions and omissions of Defendant will cause the sober living residence itself to close, thus directly rendering the housing unavailable to the individuals with disabilities who dwell there or who choose to dwell there. This properly states a claim under 42 U.S.C. § 3604(f)(1). *See, e.g.*, *Castillo Condo. Ass'n v. United States HUD*, 821 F.3d 92, 95, 98 (1st Cir. 2016) (holding that a condominium association violated 42 U.S.C. § 3604(f)(1) by refusing to grant a disabled resident a reasonable accommodation where such refusal made his housing unavailable to him as a practical matter and by instead sending him letters threatening fines); *Petty v. Portofino Council of Coowners, Inc.*, 702 F. Supp. 2d 721, 731 (S.D. Tex. 2010) (holding that the disabled plaintiff stated a viable claim under 42 U.S.C. § 3604(f)(1) by alleging that the defendant refused to make reasonable accommodations and instead sent letters fining the plaintiff for violations).

### B. Plaintiffs State a Viable Claim Under 42 U.S.C. § 3604(f)(2)

Defendant's arguments concerning Plaintiff's claimed failure to make plausible allegations regarding discrimination for purposes of 42 U.S.C. § 3604(f)(2) (Motion, at 5-7) are based on a fundamental misunderstanding of the concept of discrimination under the applicable statutory provisions. To show intentional discrimination in the form of disparate treatment, Plaintiffs need not show open and obvious discrimination in the enforcement of applicable restrictive covenants, in a case such as this where the enforcement scheme is designed to target

Plaintiffs and the Residents and where Defendant simply sweeps others in so as not to make its discriminatory intent obvious. *See, e.g.*, *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1158 (9th Cir. 2013) ("Our cases clearly establish that plaintiffs who allege disparate treatment under statutory anti-discrimination laws need not demonstrate the existence of a similarly situated entity who or which was treated better than the plaintiffs in order to prevail. . . . A willingness to inflict collateral damage by harming some, or even all, individuals from a favored group in order to successfully harm members of a disfavored class does not cleanse the taint of discrimination; it simply underscores the depth of the defendant's animus.") (citations omitted).[6] Plaintiffs include allegations concerning selective enforcement not because such allegations are required to assert a valid claim under the federal Fair Housing Act, but because they provide further factual support for Plaintiffs' claims that Defendant has displayed a high level of discriminatory animus towards the Residents and towards the disabled in general.

Defendant attempts to distinguish *Pac. Shores Props., LLC*, by suggesting factual differences between the two cases. Motion, at 5-7. However, these suggestions are immaterial. Plaintiffs have alleged that Defendant created an escalating fine structure after this Court's judgment in Plaintiffs' favor for the express purpose of targeting Plaintiffs. FAC, ¶ 23. Plaintiffs have alleged that Defendant only sweeps in other residents in the Parkstone neighborhood to give the appearance of evenhanded enforcement, so that they may continue to direct their discriminatory actions towards Plaintiffs. *Id.* Whether or not Defendant expressly

---

[6] The United States Supreme Court in *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 598 (1999), recognized that in enacting the Americans with Disabilities Act Congress had a more comprehensive view of discrimination than the traditional concept requiring uneven treatment of similarly situated individuals. Similar considerations apply here. *See, e.g.*, *Caron Foundation of Florida, Inc.*, 879 F. Supp. 2d at 1364 ("Due to the similarity of the ADA and the FHA's protections of individuals with disabilities in housing matters, courts often analyze the two statutes as one.") (citing cases).

communicated this intent or gave notice of one or two violations in past years do not affect the adequacy of Plaintiffs' allegations in this regard. On the contrary, these issues will form part of the development of the record on the merits. *See also, e.g.*, *SoCal Recovery, LLC v. City of Costa Mesa*, 2019 U.S. Dist. LEXIS 228886, *22 (C.D. Cal. Aug. 30, 2019) ("[E]ven a beneficial statute may be subject to a discrimination claim if the plaintiff puts forward circumstantial evidence of discriminatory intent. Otherwise defendants could shield themselves through over discrimination.") (citations omitted); *Yellowstone Womens First Step House, Inc. v. City of Costa Mesa*, 2016 U.S. Dist. LEXIS 189697, *11-12 (C.D. Cal. Oct. 17, 2016) (same) (citations omitted).

A plaintiff alleging discrimination under the Fair Housing Act may "simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the defendant and that the defendant's actions adversely affected the plaintiff in some way." *See, e.g.*, *Martinez v. Optimus Props., LLC*, 2018 U.S. Dist. LEXIS 228573, *12 (C.D. Cal. June 6, 2018) (citations and internal quotation marks omitted). A "plaintiff taking this approach need provide very little such evidence to raise a genuine issue of fact; any indication of discriminatory motive may suffice to raise a question that can only be resolved by a fact finder." *Id.*, at *12-13. Thus, Plaintiffs face a low bar even in withstanding a motion for summary judgment, much less a motion to dismiss.[7]

---

[7] Defendant has incorporated various evidentiary documents into the Motion. Plaintiff does not consider it appropriate to respond in kind at this stage of the proceedings. However, to the extent that this Court deems Defendant to have thus converted the Motion into a motion for summary judgment, Plaintiffs respectfully request leave to supplement their response accordingly as appropriate for a response to such a motion.

## C.    Plaintiffs State a Viable Claim Under 42 U.S.C. § 3604(f)(3)(B)

Defendant further claims that Plaintiffs have failed to state a claim under 42 U.S.C.

§ 3604(f)(3)(B) because they have failed to show their requested accommodation is both

reasonable and necessary.  Its arguments go primarily to the merits and are thus not appropriate

for a motion to dismiss at which stage this Court must accept the facts alleged in Plaintiffs' First

Amended Complaint as true.  In any event, Defendant's arguments fail.

An "accommodation is 'reasonable' under the [Fair Housing Act] unless it imposes an

undue financial and administrative burden on the defendant or requires a fundamental alteration

in the nature of the program at issue . . . ."  *United States v. City of Jackson, Miss.*, 318 F. Supp.

2d 395, 412 (S.D. Miss. 2002), *aff'd by United States v. City of Jackson, Miss.*, 359 F.3d 727 (5th

Cir. 2004).  In this instance, Plaintiffs seek only to have a moratorium on enforcement of

Defendant's parking restrictions against Harmony Haus until further order of this Court and on

collection of fines imposed on the basis of such restrictions until further order of this Court.

Such an accommodation is reasonable as (1) the moratorium is temporary and lasts only as long

as the current health crisis, (2) current circumstances do not allow Harmony Haus Residents to

leave the Residence for their usual employment and other activities and to take their vehicles

with them, (3) the Residents are professionals who are making every effort to continue both their

professional activities and their recovery activities from the Residence during this time and

cannot scurry outside to move cars around every time someone leaves,[8] (4) some of the

---

[8] Under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Accepting Plaintiffs' factual allegations as true, this Court must deny Defendant's motion to dismiss.  Plaintiffs are entitled to present evidence as to the impossibility of compliance with the parking restrictions without accommodation in the current health environment.

Residents have compromised immune systems and thus have particular risks of infection from COVID-19, and (5) the purely aesthetic sensibilities of Defendant cannot weigh as heavily in the balance during the current health crisis, particularly when the relief requested by Plaintiffs here lasts only during the pendency of that crisis.

The requested accommodation is also necessary. A necessary accommodation is one which ameliorates the disability at issue. *See, e.g.*, *Oxford House, Inc. v. Browning*, 266 F. Supp. 3d 896, 916 (M.D. La. 2017); *Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Tp. of Scotch Plains*, 284 F.3d 442, 460 (3d Cir. 2002) (noting that demonstrating the necessity of an accommodation through its amelioration of a disability means merely showing that "but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice"); *Developmental Services of NE v. City of Lincoln*, 504 F. Supp. 2d 714, 723 (D. Neb. 2007) ("An accommodation is 'necessary' if it will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability. In other words, the plaintiffs must show that without the required accommodation they will be denied the equal opportunity to live in a residential neighborhood."). *See also* FOFCOL, at ¶ COL.III.A.1.

In this case, the accommodation is necessary for the Residents to enjoy the housing of their choice. The Residents cannot safely comply with the parking restrictions currently in place, as noted above, during the pendency of the health crisis. If Plaintiffs must pay fines throughout the pendency of the health crisis because of that fact, they cannot continue to operate the Residence. Thus, Residents would have no ability to enjoy the housing of their choice at all.

Defendant argues that Plaintiffs requested an unreasonable accommodation by asking for a blanket waiver of parking restrictions. Motion, at 9-11. However, Defendant has imposed only one applicable parking restriction—the restriction that vehicles may not park in the street

for more than twelve hours.  It is precisely that restriction for which Plaintiffs requested a

waiver.  It was not necessary for Plaintiffs to request that up to six vehicles be allowed to park in

the street for more than twelve hours, although that is the force of the reasonable accommodation

request they actually presented, because (1) no deed restrictions address the number of vehicles

permitted in the street, but only the length of time they are permitted there, (2) there is no

evidence that Plaintiffs have parked more than six vehicles in the street or that they have any

intention of doing so, and (3) other deed restrictions, such as the restriction dealing with

nuisances (*see* FOFCOL, at ¶ FOF.II.2.B), would allow Defendant to take appropriate steps to

remedy such a situation even if they had granted Plaintiffs' request for a reasonable

accommodation.  Defendant's arguments on this point consequently fail.

Defendant contends that it never actually refused Plaintiffs' request for a reasonable

accommodation.  Motion, at 11.  As an initial matter, this constitutes a fact issue not suitable for

determination at this stage.  In fact, the parties engaged in an interactive process in which

Plaintiffs made once again clear that they needed six vehicles on the street.  Defendant refused

the accommodation.  More to the point at this stage of the proceedings, however, is the fact that

Defendant has continued to send violation letters to Plaintiffs with ever increasing fines based on

its newly enacted escalating fine structures.  *See* FAC, ¶ 23.  Such continued assessment of fines

constitutes a denial in and of itself.  *See, e.g.*, *Chavez v. Aber*, 122 F. Supp. 3d 581, 598-9 (W.D.

Tex. 2015) (explaining that the defendants had constructively denied the plaintiffs' request for a

reasonable accommodation, noting that "Defendants' argument that there could be no denial

because Defendants were engaging Plaintiffs in an interactive process is unpersuasive[,]" and

citing cases for the proposition that constructive denials are actionable).  Defendant asserts that

nothing about receiving violation notices interferes with the operation of the sober living

residence.  Motion, at 11.  However, as explained in Section II above, Defendant's violation

letters reflect the imposition of escalating fines.  Such fines already amount to at least

$23,650.00.  Such fines affect the transferability of the home and can lead to further enforcement

action by Defendant.  *See* Tex. Property Code § 209.  As the Fifth Circuit has explained,

"[s]tanding for injunctive relief requires a threat of present or future harm to the plaintiff."

*Deutsch v. Travis Cty. Shoe Hosp., Inc.*, 721 Fed. Appx. 336, 340 (5th Cir. 2018) (citations and

internal quotation marks omitted).  Here, the homeowners cannot transfer the residence with the

accumulation of fines in their account and Plaintiffs generally face the threat of enforcement of

ever escalating fines.  Plaintiffs face the threat of both present and future harm.

### D.  Plaintiffs State a Viable Claim Under 42 U.S.C. § 3617

Defendant further complains that Plaintiffs have not alleged a viable claim under 42

U.S.C. § 3617.  However, Plaintiffs have alleged that Defendant retaliated against them and

against the Residents by (1) creating new deed restrictions directly targeting them almost

immediately after this Court issued a judgment in Plaintiffs' favor, (2) instituting new and

punitive enforcement mechanisms targeting Plaintiffs, (3) engaging in intimidating tactics in the

form of Board members making facially discriminatory remarks to Plaintiffs and Residents, and

(4) otherwise engaging in conduct demonstrating animus towards Plaintiffs, Residents, and

others with disabilities.  Plaintiffs have stated a viable claim under 42 U.S.C. § 3617.  *See, e.g.*,

*Cox v. Phase III, Invs.*, 2013 U.S. Dist. LEXIS 85725, *33 (S.D. Tex. May 14, 2013) ("To state a

*prima facie* case for retaliation, a plaintiff must allege facts showing that (1) he engaged in an

activity that [the FHA] protects; (2) he was subjected to an adverse [action by the defendant];

and (3) a causal connection exists between the protected activity and the adverse action.  . . . The

causation element can be established by circumstantial evidence by showing that the protected

activity was closely followed by the adverse action.") (citations and internal quotation marks omitted).

## III.  CONCLUSION

In light of the foregoing, Plaintiffs respectfully requests that this Court deny Defendant's Motion to Dismiss in its entirety.

Dated:  June 10, 2020

Respectfully Submitted,

 /s/ Mark Whitburn

**Attorneys for Plaintiffs**

**Mark Whitburn**
Texas Bar No. 24042144
**Sean Pevsner**
Texas Bar No. 24079031
**Whitburn & Pevsner, PLLC**
2000 E. Lamar Blvd., Suite 600
Arlington, Texas 76006
Tel: (817) 653-4547
Fax: (817) 653-4477
mwhitburn@whitburnpevsner.com

## CERTIFICATE OF SERVICE

I certify that on this 10th day of June, 2020, a true and correct copy of Plaintiffs'

Response to Defendant's 12(b)(6) Motion to Dismiss First Amended Complaint was sent via

electronic filing service to counsel for Defendant as follows:

Eric Hansum
Niemann & Heyer, LLP
Westgate Building, Suite 313
1122 Colorado Street
Austin, Texas 78701

 /s/Mark Whitburn
Mark Whitburn