IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| HARMONY HAUS WESTLAKE, L.L.C., LING ZHOU, and FENGLIN DU, | § § § § § | |
| Plaintiffs, | | |
| v. | § § § | CIVIL ACTION NO. 1:20-cv-00486 |
| PARKSTONE PROPERTY OWNERS ASSOCIATION, INC., | § § § § | |
| Defendant. | § § § | |

# **PLAINTIFFS' AMENDED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, OR, IN THE ALTERNATIVE, MOTION TO WITHDRAW**

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................. i
TABLE OF AUTHORITIES ........................................................................................... ii
I.   INTRODUCTION ................................................................................................. 1
II.   BACKGROUND FACTS ..................................................................................... 2
III.   ARGUMENT ........................................................................................................ 8
A.   There Is a Substantial Likelihood That Plaintiffs Will Prevail on the Merits. ............... 9
B.   There Is a Substantial Threat That Plaintiffs Will Suffer Immediate Irreparable Injury If the Injunction Is Not Granted. ..................................................................... 11
C.   The Threatened Harm to Plaintiffs Outweighs the Threatened Harm the Injunction May Cause Defendant ........................................................................... 12
D.   The Granting of a Preliminary Injunction Will Not Disserve the Public Interest. 12
III.   CONCLUSION ................................................................................................... 13

# TABLE OF AUTHORITIES

## Cases

*Association of Taxicab Operators, USA v. City of Dallas*,
760 F. Supp. 693 (N.D. Tex. 2010)……………………………………………………………….8

*Blue Bell Creameries, L.P. v. Denali Co., LLC*,
2008 WL 2965655 (S.D. Tex. July 31, 2008)……………………………………………………12

*Bragdon v. Abbott*,
524 U.S. 624 (1998)………………………………………………………………………………3

*Caron Foundation of Florida, Inc., v. City of Delray Beach*,
879 F. Supp. 2d 1353 (S.D. Fla. 2012)……………………………………………………………11

*Clark v. Prichard*,
812 F.2d 991 (5th Cir. 1987)……………………………………………………………………..8

*Developmental Services of NE v. City of Lincoln*,
504 F. Supp. 2d 714 (D. Neb. 2007)……………………………………………………………..10

*E.E.O.C. v. Cosmair, Inc.*,
821 F.2d 1085 (5th Cir. 1987)……………………………………………………………………..11

*Entertainment and Sports Programming Network, Inc. v. Edinburg Community Hotel, Inc.*,
735 F. Supp. 1334 (S.D. Tex. 1986)………………………………………………………………8

*Enyart v. National Conference of Bar Examiners, Inc.*,
630 F.3d 1153 (9th Cir. 2011)…………………………………………………………………...12

*Greater New Orleans Fair Housing Action Center v. St. Bernard Parish*,
2011 WL 838899 (E.D. La. March 4, 2011)……………………………………………………..12

*Heather K. v. City of Mallard, Iowa*,
887 F. Supp. 1249 (N.D. Iowa 1995)…………………………………………………………….12

*Hooters, Inc. v. City of Texarkana, Tex.*,
897 F. Supp. 946 (E.D. Tex. 1995)………………………………………………………………..8

*Janvey v, Alguire*,
647 F.3d 585 (5th Cir. 2011)……………………………………………………………………..8

*Lakedreams v. Taylor*,
932 F.2d 1103 (5th Cir. 1991)……………………………………………………………………..8

*Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Tp. of Scotch Plains*,
284 F.3d 442 (3d Cir. 2002)……………………………………………………………………..10

*Oxford House, Inc. v. Browning*,
266 F. Supp. 3d 896 (M.D. La. 2017)……………………………………………………………10

*Productos Carnic S.A. v. Central American Beef and Seafood Trading Co.*,
621 F.2d 683 (5th Cir. 1980)……………………………………………………………………..8

*Sak v. City of Aurelia, Iowa*,
832 F. Supp. 2d 1026 (N.D. Iowa 2011)…………………………………………………………13

*State of Texas v. Seatrain Int'l, S.A.*,
518 F.2d 175 (5th Cir. 1975)……………………………………………………………………..8

*Step by Step, Inc. v. City of Ogdensburg*,
176 F. Supp. 3d 112 (N.D.N.Y. 2016)………………………………………………………..…11

*United States v. City of Jackson, Miss.*,
318 F. Supp. 2d 395 (S.D. Miss. 2002)…………………………………………………………..8

*United States v. City of Jackson, Miss.*,
359 F.3d 727 (5th Cir. 2004)……………………………………………………………………..8

*Wilson v. Thomas*,
2014 WL 7405462 (E.D.N.C. Dec. 23, 2014)…………………………………………………..12

## Statutes

42 U.S.C. § 3604(f)(3)(B)………………………………………………………………………..8

Plaintiffs Harmony Haus Westlake, L.L.C. ("Harmony Haus"), Ling Zhou, and Fenglin Du hereby submit their Plaintiffs' Amended Motion for Temporary Restraining Order and Preliminary Injunction, or, In the Alternative, Motion to Withdraw and would respectfully show the Court as follows:

## I. INTRODUCTION

Plaintiff Harmony Haus operates a sober living residence in a neighborhood with a homeowners' association operated by Defendant. Defendant sought to prevent Harmony Haus from having twelve residents live in this sober living residence. On February 18, 2020, this Court ruled that Harmony Haus could house twelve such residents there. Almost immediately thereafter, Defendant initiated measures to try to hinder Harmony Haus from accomplishing this by (1) altering its deed restrictions for this purpose, (2) fining Plaintiffs for alleged parking violations without providing evidence as to the nature of the alleged violations, and (3) continuing such activities even during the pendency of the current COVID-19 health crisis, during which Plaintiffs have no ability to comply with the restrictions at issue. Plaintiffs have filed the above-captioned lawsuit complaining of Defendant's failure to provide a reasonable accommodation, its intentional discrimination, and its retaliation. For purposes of this Motion, Plaintiffs need only address the first of these issues. Defendant has failed to provide Plaintiffs the reasonable accommodation necessary for them to continue to operate the sober living residence during the course of the current unanticipated health crisis. As explained below, the federal Fair Housing Act requires that they provide such an accommodation. Plaintiffs submitted a Motion for Temporary Restraining Order (Dkt. No. 2) previously on May 5, 2020, contending that Defendant's continued fining would force them to close the sober living residence—an event which would constitute irreparable harm. This Court denied Plaintiffs' initial Motion for

1

Temporary Restraining Order on May 12, 2020, indicating that Plaintiffs had not borne their burden of demonstrating irreparable harm. Defendant has continued to send Plaintiffs notices of violations with escalating fines, which now amount to at least $37,250.00. Because they wish to sell the dwelling at issue and because they cannot in any event withstand the prospect of such escalating fines, Plaintiffs Ling Zhou and Fenglin Du now intend to initiate eviction proceedings against Plaintiff Harmony Haus and have informed Harmony Haus of this fact. Because this threat of eviction constitutes a threat of irreparable harm, Plaintiffs once again submit a Motion for Temporary Restraining Order to this Court. In the alternative, if this Court denies Plaintiffs' Motion for Temporary Restraining Order once again, Plaintiffs move this Court to permit the withdrawal of the undersigned Plaintiffs' counsel as he and his firm can no longer represent Plaintiffs when the above-referenced conflict has set them at odds.

Consequently, Plaintiffs move this Court to enter a temporary restraining order and preliminary injunction enjoining Defendant from enforcement of Defendant's parking restrictions against Harmony Haus until further order of this Court and from collection of fines imposed on the basis of such restrictions until further order of this Court. In the alternative, Plaintiffs move this Court to permit the withdrawal of the undersigned Plaintiffs' counsel and his firm from further representation in this matter.

## II. BACKGROUND FACTS

Plaintiff Harmony Haus operates integrative transitional sober living residences in the Hyde Park and Westlake areas of Austin, Texas. *See, e.g.*, *Harmony Haus Westlake, LLC v. Parkstone Property Owners Association, Inc.*, No. 1:19-cv-01034-XR, Findings of Fact and Conclusions of Law, Dkt. No. 29 (Feb. 18, 2020) ("FOFCOL"), at ¶ FOF.I.3. Specifically, it operates such a residence at 2105 Real Catorce Drive, Austin, Texas 78746 (the "Residence"). *See id*. As individuals recovering from drug addiction, the residents of the Residence (the

"Residents") are qualified persons with a disability under the federal Fair Housing Act ("FHA").[1] *See* FOFCOL, at ¶¶ COL.II.6-8. The Residence is located within the homeowners' association operated by Defendant Parkstone Property Owners Association, Inc. (the "Parkstone POA"). *See id.*, at ¶¶ FOF.1.2-1.4. Ling Zhou and Fenglin Du own the Residence. *See id.*, at ¶ FOF.1.4.

On October 22, 2019, Plaintiffs filed a complaint in this Court in Cause No. 1:19-cv-01034, complaining, among other things, that Defendant had discriminated against them by refusing to grant them a reasonable accommodation from the restrictive covenants, regulations, and/or rules which would impede its operation and have the effect of denying the disabled Residents equal access to housing of their choice in the community. In particular, Defendant refused to allow twelve unrelated individuals to reside at the Residence. After a January 2020 bench trial, this Court issued Findings of Fact and Conclusions of Law and a final judgment on February 18, 2020, determining that Defendant's actions in this regard were indeed discriminatory and enjoining Defendant from refusing to allow twelve unrelated individuals to reside at the Residence.

On March 3, 2020, exactly two weeks after this Court issued its final judgment in the above-referenced matter, Defendant voted to enact newly revised restrictive covenants. *See* Exh. B. Included among these revised covenants was a provision that preemptively disallowed any reasonable accommodation request with respect to the single family use restriction under the federal Fair Housing Act for any residence within 1000 feet of the Residence. *See* Exh. B, March 5, 2020, Amendment to Rules of Parkstone Property Owners Association, Inc., at page 8,

---

[1] The FHA uses the term "handicap" instead of the term "disability." Both terms have the same legal meaning. *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998) (noting that definition of "disability" in the Americans with Disabilities Act is drawn almost verbatim "from the definition of 'handicap' contained in the Fair Housing Amendments Act of 1988").

¶ 8. Most significantly, for present purposes, the newly amended deed restrictions created an escalating fine structure to punish violations, thus providing Defendant a mechanism to accelerate quickly any conflict with Plaintiffs, real or perceived, into a scenario in which Plaintiffs' ability to operate the Real Catorce Residence at all and to provide housing to individuals with disabilities would come into question. *See* Exh, B, at page 5. As discussed below, precisely such a scenario has now come to pass.

Almost immediately, Defendant began sending violation notices to Plaintiffs, complaining of, among other things, violations of parking restrictions that prohibit parking in the street for more than twelve hours at a time. *See* Exh. C. As of the last of these notices, dated June 5, 2020, Defendant had assessed fines totaling at least $37,250.00, with an escalating fee structure. *See* Exh. C. Although Defendant has claimed that it is now enforcing these restrictions with respect to others in the neighborhood as well, Defendant appears to engage in this practice for the sole purpose of allowing it to target Plaintiffs with hoped-for impunity.

On March 24, 2020, as a result of the current coronavirus health crisis, the City of Austin issued a shelter-in-place order requiring that "all individuals currently living within the City of Austin shelter at their place of residence except as allowed by [the] Order." *See* Stay Home—Work Safe Order (Order No. 20200324-007) by the Mayor of the City of Austin ("Stay Home Order").[2] In light of this order, the Residents could not go to work or engage in any other activity outside the residence, unless that work or other activity met the conditions specified in the order. *See* Stay Home Order, at Sections 1-4. Consequently, except when certain residents had grounds for leaving the Residence that qualified as permissible under the order, they could

---

[2] *See* https://www.austintexas.gov/sites/default/files/files/Order%2020200324-007%20-%20Stay%20Home%20-%20Work%20Safe.pdf.

4

not take any measures to move their vehicles elsewhere for purposes of complying with Defendant's parking restrictions. *See id.* Under the shelter-in-place order, even all travel of any kind was prohibited, except for essential travel as specified under the order. *See* Stay Home Order, at Section 4. Although it was originally set to expire on April 13, 2020, the order was later extended until May 8, 2020. *See* Stay Home Order, at Section 1. *See also* Stay Home— Work Safe Order (Order No. 20200413-009).[3] Due to the actions of the Governor of Texas, however, the order apparently expired on May 1, 2020. *See* Executive Order.[4]

Despite the expiration of the shelter-in-place order in the City of Austin, many businesses remain closed, including businesses owned by or employing a number of the Residents. *See* June 10, 2020 Affidavit of Daniel Ragetté ("Rag. Aff.," attached as Exh. A), at ¶ 6. Also, many of the Residents have had to take contract work in their respective professions because of the current health crisis, as opposed to seeking regular employment in a standard office setting, and must therefore continue to pursue such activities in the home until such time as they are able to pursue regular employment. Rag. Aff., at ¶ 7.

Several current Residents have compromised immune systems which make them both more vulnerable to COVID-19 and more susceptible to its potentially lethal impact. Rag. Aff., at ¶ 8. Such individuals continue to need to shelter in place for their own safety, regardless of the fact that the City of Austin no longer has a formal shelter-in-place order in effect. *Id.* After all, the substantial risk of infection continues.[5]

---

[3] *See* https://www.austintexas.gov/sites/default/files/files/document_96DEBEEC-E581-05E0-8A3D444404948A84.pdf.
[4] *See* https://gov.texas.gov/uploads/files/press/EO-GA-14_Statewide_Essential_Service_and_Activity_COVID-19_IMAGE_03-31-2020.pdf
[5] *See, e.g.*, https://www.cnn.com/2020/05/04/health/us-coronavirus-monday/index.html (May 4, 2020, article reporting that "Coronavirus model projects 134,000 deaths in US, nearly double its last estimate."

Reports indicate that, even if the current health crisis abates somewhat during the summer months—an event which is not yet certain to occur—an even stronger and deadlier wave of COVID-19 may sweep the city, the state, and the nation in the fall.[6] Consequently, the current health crisis is unlikely to end in the near future.

On March 31, 2020, Plaintiffs requested a reasonable accommodation from Defendant requesting that it waive the parking restrictions during the pendency of the shelter-in-place order in Austin. *See* Exh. F. Defendant countered with an offer to allow four vehicles to park on the street during the pendency of the order, but only if the driveway and garage were fully utilized at all times. *See* Exh. G. Plaintiffs cannot (1) keep eight vehicles in the driveway and garage in any event, or (2) move all the vehicles in and out of the driveway every time a resident has to leave. Rag. Aff., at ¶ 9. Pictures of the driveway and street support this conclusion. *See* Exh. D. As an initial matter, residents are in many cases working from home or taking meetings and the like and cannot rush outside to move cars around at any given moment. Rag. Aff., at ¶ 9. Secondly, during the course of the preceding litigation between the parties, Defendant put forward as a partial basis for its resistance to Plaintiffs' intended use of the Residence that the Residents made too much noise in moving their vehicles in and out of the driveway. Rag. Aff., at ¶ 9. Plaintiff Harmony Haus would literally have to close the Residence if it either (1) had to keep eight cars in the garage and driveway, which would prove completely unmanageable, or (2) had to pay fines for every alleged violation based on its inability to keep eight cars in the garage and driveway. Rag. Aff., at ¶ 10. Defendant has refused to provide any evidence as to the basis for its allegations of alleged violations, despite multiple requests by Plaintiffs, thereby effectively

---

[6] *See, e.g.*, cbsnews.com/news/second-wave-coronavirus-likely.

forcing Defendant to litigate this issue. *See* Exhs. C, F.[7] After all, Plaintiffs cannot even determine at what dates or times Defendant alleges these violations to have occurred or what vehicles Defendant alleges to have been involved in these violations. *See* Exh. C.

This Court denied Plaintiffs' original Motion for Temporary Restraining Order on May 12, 2020, ruling that Plaintiffs had failed to carry their burden to show irreparable harm from Defendant's fining activities sufficient to prevail on such a motion. Defendant has continued to send violation notices to the homeowners. *See, e.g.*, Exh. C. The current fine amounts total at least $37,250.00. Consequently, the homeowners, Plaintiffs Ling Zhou and Fenglin Du, have indicated to Harmony Haus that they will commence eviction proceedings if the fines continue. Rag. Aff., at ¶ 12; Exh. E.

Because Defendant has refused to grant Plaintiffs a reasonable accommodation even during the pendency of the current health crisis and continues to impose fines on them without even providing evidence as to the nature of the alleged violations, other than as noted above, Plaintiffs have no choice but to renew their motion to this Court for a temporary restraining order and a preliminary injunction enjoining Defendant from enforcement of Defendant's parking restrictions against Harmony Haus until further order of this Court and from collection of fines imposed on the basis of such restrictions until further order of this Court. Because Defendant's actions have caused a conflict between Plaintiffs Ling Zhou and Fenglin Du, on the one hand, and Harmony Haus, on the other hand, Plaintiffs must respectfully request permission to allow the undersigned counsel to withdraw if this Court does not grant them the requested injunctive relief. They will then pursue separate counsel.

---

[7] Only with the June 5, 2020, notice did Defendant provide any alleged evidentiary information. Exh. C.

7

## III.     ARGUMENT

To prevail in a motion for a temporary restraining order ("TRO") or a preliminary injunction, Plaintiffs must show (1) a substantial likelihood that they will prevail on the merits; (2) a substantial threat that irreparable harm will result if the injunction is not granted; (3) that the threatened injury outweighs the threatened harm to Defendant; and (4) that the granting of the preliminary injunction will not disserve the public interest. *See Janvey v, Alguire*, 647 F.3d 585, 595 (5th Cir. 2011) (preliminary injunction); *Lakedreams v. Taylor*, 932 F.2d 1103, 1107 (5th Cir. 1991) (same); *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987) (preliminary injunction or temporary restraining order).

Plaintiffs need not necessarily satisfy each of these factors to the same degree. Rather, a court must use "a balancing-type approach in reviewing a preliminary injunction or TRO application." *State of Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975). When analyzing the degree of "success on the merits" necessary to justify injunctive relief, the Fifth Circuit employs a sliding scale that involves balancing the hardships associated with the issuance or denial of a preliminary injunction with the degree of likelihood of success on the merits. *See Productos Carnic S.A. v. Central American Beef and Seafood Trading Co.*, 621 F.2d 683, 686 (5th Cir. 1980). Indeed, a showing of even some likelihood of success will justify temporary injunctive relief. *See, e.g.*, *Association of Taxicab Operators, USA v. City of Dallas*, 760 F. Supp. 693, 696 (N.D. Tex. 2010) ("Even some likelihood of success can be enough to support the issuance of a preliminary injunction."); *Hooters, Inc. v. City of Texarkana, Tex.*, 897 F. Supp. 946, 949 (E.D. Tex. 1995); *Entertainment and Sports Programming Network, Inc. v. Edinburg Community Hotel, Inc.*, 735 F. Supp. 1334, 1342 (S.D. Tex. 1986). In this case, Plaintiffs have met all of the factors necessary for this Court to issue a TRO and a preliminary injunction.

**A.      There Is a Substantial Likelihood That Plaintiffs Will Prevail on the Merits.**

Plaintiffs have a substantial likelihood of prevailing on the merits of their claims.

Under the federal Fair Housing Act, 42 U.S.C. § 3604(f)(3)(B), it is unlawful "[t]o refuse to make reasonable accommodations in land use and zoning policies and procedures where such accommodations may be necessary to afford persons or groups of persons with disabilities an equal opportunity to use and enjoy a dwelling." As the United States Congress has expressly recognized, the Fair Housing Act "is intended to prohibit the application of special requirements through land use regulations, restrictive covenants, and conditional or special use permits that have the effect of limiting the ability of [disabled] individuals to live in the residence of their choice in the community." H.R. Rep. No. 711, 100th Cong., 2d Sess., reprinted in U.S.C.C.A.N. 2173, 2185 (1988). This Court has already determined that the Residents are persons with disabilities. Consequently, it remains only to determine whether the accommodations Plaintiffs request are reasonable and necessary. They are.

An "accommodation is 'reasonable' under the [Fair Housing Act] unless it imposes an undue financial and administrative burden on the defendant or requires a fundamental alteration in the nature of the program at issue . . . ." *United States v. City of Jackson, Miss.*, 318 F. Supp. 2d 395, 412 (S.D. Miss. 2002), *aff'd by United States v. City of Jackson, Miss.*, 359 F.3d 727 (5th Cir. 2004). In this instance, Plaintiffs seek only to have a moratorium on enforcement of Defendant's parking restrictions against Harmony Haus until further order of this Court and on collection of fines imposed on the basis of such restrictions until further order of this Court. Such an accommodation is reasonable as (1) the moratorium is temporary and lasts only as long as the current health crisis, (2) current circumstances do not allow Harmony Haus Residents to leave the Residence for their usual employment and other activities and to take their vehicles with them, (3) the Residents are professionals who are making every effort to continue both their

professional activities and their recovery activities from the Residence during this time and cannot scurry outside to move cars around every time someone leaves, (4) some of the Residents have compromised immune systems and thus have particular risks of infection from COVID-19, and (5) the purely aesthetic sensibilities of Defendant cannot weigh as heavily in the balance during the current health crisis, particularly when the relief requested by Plaintiffs here lasts only during the pendency of that crisis.

The requested accommodation is also necessary. A necessary accommodation is one which ameliorates the disability at issue. *See, e.g.*, *Oxford House, Inc. v. Browning*, 266 F. Supp. 3d 896, 916 (M.D. La. 2017); *Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Tp. of Scotch Plains*, 284 F.3d 442, 460 (3d Cir. 2002) (noting that demonstrating the necessity of an accommodation through its amelioration of a disability means merely showing that "but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice"); *Developmental Services of NE v. City of Lincoln*, 504 F. Supp. 2d 714, 723 (D. Neb. 2007) ("An accommodation is 'necessary' if it will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability. In other words, the plaintiffs must show that without the required accommodation they will be denied the equal opportunity to live in a residential neighborhood.")

In this case, the accommodation is necessary for the Residents to enjoy the housing of their choice. The Residents cannot safely comply with the parking restrictions currently in place, as noted above, during the pendency of the health crisis. If Plaintiffs must pay fines throughout the pendency of the health crisis because of that fact, they cannot continue to operate the Residence. Thus, Residents would have no ability to enjoy the housing of their choice at all. Indeed, at present, the homeowners have expressed their intent to commence eviction

proceedings in light of the mounting fines. Consequently, the Residents face an even more immediate danger of losing the ability to use and enjoy the housing of their choice.

There is a substantial likelihood that Plaintiffs will prevail on their intentional discrimination and retaliation claims as well. However, as Plaintiffs need not prevail on all claims to obtain the temporary relief requested here, they do not brief those issues now. Such issues, which require the Court's assessment of witness credibility and subjective motivations, are better left to a later stage of the proceedings.

**B.     There Is a Substantial Threat That Plaintiffs Will Suffer Immediate Irreparable Injury If the Injunction Is Not Granted.**

Plaintiffs will suffer immediate irreparable injury if the injunction is not granted. If they must pay fines for unavoidable violations of parking restrictions during the pendency of the current health crisis, they must inevitably close. Thus, even apart from the fact that the residents themselves would have to leave the housing of their choice in the community, the mission of Harmony Haus would be frustrated. This alone constitutes irreparable harm. *See, e.g.*, *Caron Foundation of Florida, Inc.*, *v. City of Delray Beach*, 879 F. Supp. 2d 1353, 1373 (S.D. Fla. 2012) ("Frustration of a rehabilitation provider's mission can cause irreparable harm.") Because of the continued imposition of fines after this Court's denial of Plaintiffs' initial Motion for Temporary Restraining Order, the homeowners have now indicated that they must pursue eviction proceedings. Thus, Plaintiff Harmony Haus and the Residents face a direct threat of irreparable harm.

Indeed, courts have held that a violation of the Fair Housing Act "is itself sufficient to create a presumption of irreparable harm, which shifts the burden to defendant to prove that any injury that may occur is not irreparable." *Step by Step, Inc. v. City of Ogdensburg*, 176 F. Supp. 3d 112, 133 (N.D.N.Y. 2016) (citing cases). The Fifth Circuit itself has held that courts should

11

presume irreparable harm from the mere fact of violation of civil rights statutes.  *See E.E.O.C. v. Cosmair, Inc.*, 821 F.2d 1085, 1090 (5th Cir. 1987) ("When a civil rights statute is violated, irreparable injury should be presumed from the very fact that the statute has been violated.") (citation and internal quotation marks omitted).  *See also Greater New Orleans Fair Housing Action Center v. St. Bernard Parish*, 2011 WL 838899, *2 (E.D. La. March 4, 2011) (quoting *Cosmair, Inc.*, and applying in the context of the Fair Housing Act).

C. **The Threatened Harm to Plaintiffs Outweighs the Threatened Harm the Injunction May Cause Defendant.**

Plaintiffs have demonstrated that they will suffer irreparable harm if the requested injunction is not granted.  Plaintiffs will have to close the Residence, and the Residents will be unable to reside in the housing of their choice—a sober living residence which has already demonstrated its right to this Court of protection under the Fair Housing Act.  Defendant cannot point to any harm whatsoever other than a temporary affront to their aesthetic sensibilities.  Such considerations cannot outweigh Plaintiffs' showing of harm.

D. **The Granting of a Preliminary Injunction Will Not Disserve the Public Interest.**

Granting preliminary relief and a TRO requiring a moratorium on the levying of fines related to alleged violations of the prohibition against parking in the street for more than twelve hours and on attempts to collect such fines will not disserve the public interest.  No public interest would be served by allowing the continuation of such activities in the midst of the current health crisis.  Furthermore, courts have held that "the public interest is served whenever state and federal laws are enforced."  *See, e.g.*, *Blue Bell Creameries, L.P. v. Denali Co., LLC*, 2008 WL 2965655, *7 (S.D. Tex. July 31, 2008) (citing cases).  This is particularly true with respect to enforcement of civil rights statutes.  *See, e.g.*, *Enyart v. National Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1167 (9th Cir. 2011) ('In enacting the ADA, Congress

demonstrated its view that the public has an interest in ensuring the eradication of discrimination on the basis of disabilities."); *Wilson v. Thomas*, 2014 WL 7405462, *3 (E.D.N.C. Dec. 23, 2014) ("[T]he public interest clearly weighs in favor of any injunction in this case. First, the public interest lies with upholding the law and having the mandates of the ADA . . . enforced."); *Sak v. City of Aurelia, Iowa*, 832 F. Supp. 2d 1026, 1047 (N.D. Iowa 2011) ("[T]he national public interest in enforcement of the ADA 'trumps' . . . more local public interest[.]");*Heather K. v. City of Mallard, Iowa*, 887 F. Supp. 1249, 1266 (N.D. Iowa 1995) ("In light of [its] legislative history, the public interest is served by enforcement of anti-discrimination provisions of Title II of the ADA.") The granting of a TRO and preliminary injunction will not disserve the public interest.

### E. This Court Should Permit Withdrawal of Counsel, In the Alternative, If It Denies Plaintiffs' Motion for Temporary Restraining Order.

Based on the fact that the homeowners have indicated to Harmony Haus that they will commence eviction proceedings against Harmony Haus if this Court denies its Amended Motion for Temporary Restraining Order, Plaintiffs seek permission from this Court to allow the undersigned counsel and his law firm to withdraw. A conflict between Plaintiffs will have emerged to such an extent that it would be inappropriate for the undersigned counsel and his law firm to represent both the homeowners and Harmony Haus or to represent either of them when such representation might prove adverse to the other.

### III. CONCLUSION

In light of the foregoing, Plaintiffs respectfully renews its request that this Court enter a temporary restraining order and preliminary injunction enjoining Defendant from enforcement of Defendant's parking restrictions against Harmony Haus until further order of this Court and on collection of fines imposed on the basis of such restrictions until further order of this Court.

Dated: June 10, 2020

                Respectfully Submitted,

                */s/ Mark Whitburn*

                **Attorneys for Plaintiffs**

                **Mark Whitburn**
                Texas Bar No. 24042144
                **Sean Pevsner**
                Texas Bar No. 24079031
                **Whitburn & Pevsner, PLLC**
                2000 E. Lamar Blvd., Suite 600
                Arlington, Texas 76006
                Tel: (817) 653-4547
                Fax: (817) 653-4477
                mwhitburn@whitburnpevsner.com

## CERTIFICATE OF SERVICE

I certify that on this 10th day of June, 2020, a true and correct copy of Plaintiffs' Amended Motion for Temporary Restraining Order and Preliminary Injunction was sent via electronic mail to counsel for Defendant as follows:

Eric Hansum
Niemann & Heyer, LLP
Westgate Building, Suite 313
1122 Colorado Street
Austin, Texas 78701

                */s/Mark Whitburn*
                Mark Whitburn