IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| HARMONY HAUS WESTLAKE, L.L.C., LING ZHOU, AND FENGLIN DU | § § § § | |
| *Plaintiffs,* | § § | |
| v. | § | CIVIL ACTION NO. 1:20-CV-486-XR |
| | § § | |
| PARKSTONE PROPERTY OWNERS ASSOCIATION, INC. | § § § | |
| *Defendant.* | § § | |

# DEFENDANT'S RESPONSE TO PLAINTIFFS' SECOND MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Parkstone Property Association, Inc. ("**Parkstone**") makes the following response to Plaintiffs' Second Motion for Temporary Restraining Order and Preliminary Injunction [Dkt. No. 13] and would show as follows:

## INTRODUCTION

Plaintiffs' second request for injunctive relief is not merely without merit; it is absurd. The alleged threat against which Harmony Haus[1] now seeks protection comes not from Parkstone but from Harmony Haus' *fellow* plaintiffs, Zhou and Du, who have threatened it with eviction. There is no order against Parkstone that would stop Zhou and Du from doing whatever they feel they need to do to protect themselves from the consequences of Harmony Haus's actions.

---

[1] Except when otherwise specified differently, Harmony Haus or Plaintiffs refer collectively to all of the parties.

1 - **DEFENDANT'S RESPONSE TO PLAINTIFFS' SECOND MOTION FOR INJUNCTIVE RELIEF**

Moreover, if Zhou and Du are threatening eviction only because of their fear of fines being imposed by Parkstone, there is nothing the Court can do to help without a final trial. Plaintiffs ask that Parkstone be enjoined from "enforcing" the fines it has imposed, but that simply means not collecting the fines through litigation. An injunction against filing suit to collect the fines would not change the fact that as long as Harmony Haus continues to violate the Declaration fines will continue to be imposed and Zhou and Du will face an ever-escalating financial risk. The only way this Court could relieve the threat before too many more fines are accrued would be an expedited trial, but if the Court chooses an expedited trial then the TRO is unnecessary.

The conflicting claims by Harmony Haus that (1) it cannot comply with the parking restrictions and (2) it is not sure it is violating the parking restrictions are further absurdities. At page 6 of the Motion Harmony Haus claims that it "cannot (1) keep eight vehicles in the driveway and garage" as part of its argument that an accommodation is necessary. But it then complains that "Defendant has refused to provide any evidence as to the basis for its allegations of alleged violations . . . thereby effectively forcing Defendant [sic] to litigate this issue."[2] Whatever its complaints about the details, Harmony Haus knows that it is in constant violation of the parking restrictions because the ongoing violations are the entire basis for its accommodation request and current lawsuit.

In addition, the threat of eviction is one that Harmony Haus controls; all it needs to do to avoid eviction, according to the text it attached, is "either stop the parking violations immediately or pay the fines" in the words of Zhou. The problem in this case is

---

[2] This statement is false. Plaintiffs were provided with specific details showing detailed vehicle information. (Plaintiffs' Amended Motion, Ex. C, June 5, 2020 letter).

2   -   **DEFENDANT'S RESPONSE TO PLAINTIFFS' SECOND MOTION FOR INJUNCTIVE RELIEF**

not the fines; it is Harmony Haus' defiance of this Court's Judgment requiring it to comply with the parking restrictions in the Declaration.

The final absurdity is Harmony Haus's claim that the alleged impossibility of keeping only four cars on the street for more than 12 hours does not come from the fact that 12 adult men with their individual cars is too many for this house and neighborhood, but rather, from this pandemic. Harmony Haus has never complied with the parking restrictions, so blaming the pandemic for its current predicament does not make any sense at all. The Second Motion for Temporary Restraining Order should be denied.

## FACTS

This Court's Judgment in Case No. 1-19-CV-1034-XR explicitly requires that Plaintiffs and the residents of its sober living home on 2105 Real Catorce (also collectively referred to as **Harmony Haus**) comply with the existing rules of conduct for those who live in the neighborhood contained in the Declaration of Covenants, Conditions and Restrictions for the neighborhood. The Court wrote:

> The remaining provisions, including the noise and nuisance provision (Section 2.8) and parking provision (Section 2.11) remain in effect, and Defendant may enforce those if there are violations, though any such enforcement must be applied in an evenhanded manner that treats handicapped and non-handicapped residents alike.

(Findings of Fact and Conclusions of Law 1:19-cv-01034-XR, ECF No. 29 at p. 12). Harmony Haus ignored this from the beginning, and now Harmony Haus, using the current Covid-19 healthcare emergency as an excuse, wants the Court to enjoin Parkstone from doing what the Court explicitly permitted.[3]

---

[3] Harmony Haus admits in its Amended Motion and Amended Complaint that the stay-at-home orders it originally used to justify its accommodation request are expiring and may not be renewed, but argues that the broader healthcare emergency justifies an

3 - **DEFENDANT'S RESPONSE TO PLAINTIFFS' SECOND MOTION FOR INJUNCTIVE RELIEF**

Harmony Haus is not the first resident to ignore the 12-hour parking restriction,[4] and violation notices and fines have been imposed from time to time in the past, prior to Harmony Haus's tenancy. After Harmony Haus arrived, its bad example caused an increase in parking violations. When this Court entered its Judgment in the prior lawsuit Parkstone decided to finally implement a long-discussed plan (contemplated since 2015, but not effectuated because violations were relatively few) to make its violation notices and fines standardized (through a fining schedule applicable to all violations) and more descriptive and easier to understand. This did not create any stricter rule, it simply standardized the enforcement protocol and made the restrictions more transparent and user-friendly.

Harmony Haus admits in its Amended Complaint that almost immediately after the Judgment in the prior suit was entered it began violating the Declaration with respect to parking.[5] When Parkstone began issuing violation notices to Harmony Haus (at the same time Parkstone was continuing to issue violation notices to other neighborhood offenders), Harmony Haus invoked Covid-19 as an excuse to demand a blanket waiver of all parking restrictions. Parkstone offered Harmony Haus an alternative accommodation that would waive the 12-hour street parking limit for up to four cars as long as the driveway and garage are full but Harmony Haus rejected that offer and filed this lawsuit without making any counter-proposal. It has now accumulated approximately 300 plus

---

accommodation as well. (Amended Motion at pp. 4-5). The request was unreasonable even with the stay-at-home orders were in place, so the changing circumstances have no effect on this Response.

[4] Most of the facts in this section are taken from the Declaration of Brian Pye, attached as Exhibit 1.

[5] Amended Complaint at ¶ 6 – it is notable that Harmony Haus never claims it did not violate the Declaration; only that enforcement was somehow discriminatory.

violations of the 12-hour parking rule since this Court's prior Judgment, making it by far the worst violator in the neighborhood.[6] The most recent violation letter (Plaintiffs' Response, Exhibit C at p. 14 – 17), includes license plate and other detailed automobile information for the 68 violations it covers as requested by the owners Zhou and Du.[7] However, the problem is not ignorance, the problem is an unwillingness to play by the same rules as everyone else in the neighborhood.

## ARGUMENT

### I. Harmony Haus' "Background Facts" are mostly wrong.

Harmony Haus' claims about the facts simply do not make sense. Taking up the key assertions in order:

> "except when certain residents had grounds for leaving the Residence that qualified as permissible under the order, they could not take any measures to move their vehicles elsewhere for purposes of complying with Defendant's parking restrictions." (Amended Motion at p. 4-5)

All legal restrictions from Governor Abbott on residents coming and going expired before this lawsuit was filed and local orders cannot supersede state orders. Moreover, the suggestion that it would be unsafe for residents to leave the house long enough to move a car contradicts the stay-at-home orders themselves, for they permitted outdoor activities so long as social distancing was maintained.[8] With restrictions lifting across Texas, the violations continue further showing Covid-19 is not the reasons for the parking violations. Furthermore, if Harmony Haus residents truly were home-bound with no ability to leave

---

[6] *See* Exhibit 1 as well as the June violation letter provided in Plaintiff's Response, Exhibit C at p. 14-17.
[7] Because the owners are responsible for all violations they receive the notices and information. Parkstone assumes they share this with Harmony Haus.
[8] *See generally* https://www.austintexas.gov/sites/default/files/files/document_96DEBEEC-E581-05E0-8A3D444404948A84.pdf at p. 5.

5 - **DEFENDANT'S RESPONSE TO PLAINTIFFS' SECOND MOTION FOR INJUNCTIVE RELIEF**

the home in order to move vehicles, it would be very easy for all 12 cars to occupy the garage (two spaces) and the driveway (six spaces), leaving only four cars on the street – the exact accommodation the Parkstone offered and Harmony Haus refused to accept, instead demanding a full and unconditional waiver of all parking restrictions.

With respect to Harmony Haus' next assertion:

> "Plaintiffs cannot . . . keep eight vehicles in the driveway and garage in any event." (Amended Motion at p. 6).

This is not true. The second/fifth photographs in Exhibit C to the Amended Motion shows six cars can fit in the driveway. The residence has a two-car garage and since two plus six equals eight it is evident Harmony Haus can keep eight vehicles in the driveway and garage. Here is yet another picture easily showing six cars can fit in the driveway:



In any case room in the driveway is not the problem. The following photograph, taken as recently as June 5, 2020, shows that there is only one car in the driveway and three on the street.



Harmony Haus is not even trying to follow the parking restrictions but the reason is not Covid-19; the reason is just that its owner and residents do not like to be told what to do. Incidentally, the above photograph also destroys Harmony Haus's assertions that most or all of is residents are isolated at home still from Covid-19 as this was taken on a weekday afternoon.

Harmony Haus also claims it "cannot . . . (2) move all the vehicles in and out of the driveway every time a resident has to leave." (Amended Motion at p. 6). This cannot be literally true since there is no physical impediment to moving the cars. More important, moving cars should not be more than an occasional inconvenience according to Harmony Haus' own claims. Harmony Haus claims that many employers of its residents remain closed, that "many of the Residents have had to take contract work and therefore work at home," and that "several" residents must remain in the house for their own safety.

(Amended Motion at pp. 4-5). And in its latest request for accommodation (Amended Motion, Exhibit F), Harmony Haus claims that in the earliest stages of recovery residents "ride together with other residents and mentors." With so many Residents unable to leave the house, allegedly, it should be relatively easy to put their cars in the driveway and garage so that Residents who need to drive can park on the street or in the two driveway spots closest to the street.[9] Thus, half of its residents can come and go without another car ever being moved.

With up to six cars able to come and go without another car moving it is clearly untrue that, as Harmony Haus claims, it would:

> "literally have to close the Residence if . . . had to keep eight cars in the garage and driveway, which would prove completely unmanageable . . . ." (Amended Motion at p. 6).

The premise of Harmony Haus' claim is that most of the residents are at home almost all the time, meaning they should be able to spend a few minutes from time to time moving cars if it proves necessary. After all, this is what every other resident of the neighborhood must do.

Nevertheless, if Harmony Haus were really interested in compliance nothing stops it from exploring other options to try and follow the parking restrictions. For instance, it could operate a shuttle or provide a van for the Residence to reduce the number of cars parked on the street.

The bigger question here still remains: why won't Harmony Haus require its residents to obey the parking restrictions? The answer must be that its profit goals require it to treat the residents as pampered guests at a luxury hotel rather than as recovering

---

[9] This would be consistent with Parkstone's offer to allow 4 cars on the street for any length of time.

addicts trying to learn, among other things, how to live as responsible members of the community.

The Court should note that parking was not the only persistent violation by Harmony Haus. Many of the earlier fines imposed on Harmony Haus are not for violations of the 12-hour parking rule. Sections 1.12 and 2.16 of the Declaration require that all improvements, including exterior lighting fixtures and equipment, must be approved by Parkstone prior to installation. Harmony Haus ignored this restriction for quite some time and installed outdoor lighting so bright that neighbors complained. The violation notice dated March 11, 2020[10] includes a violation of the outdoor lighting restrictions. The March 18, 2020 notice[11] observes that the outdoor lighting violation had still not been rectified. By the time of the March 27, 2020 notice[12] fines for the ongoing outdoor lighting violation amounted to $2,275. Only after the third notice did Harmony Haus finally turn off or remove the lights. Its problem was not that this was hard; its problem was that only a financial penalty would persuade it to obey the rules.

**II. Harmony Haus has failed to show any likelihood of success on the merits.**

Harmony Haus seeks a Temporary Restraining Order based only on the claimed denial of its request for accommodation.[13] Thus, the relevant likelihood of success on the merits is for that accommodation claim. Not only has Harmony Haus failed to show any likelihood of success on the merits as a matter of fact, it has not even pleaded a claim for failure to accommodate that would withstand a Rule 12(b) Motion to Dismiss.

---

[10] Amended Motion, Exhibit C at p. 3.
[11] Amended Motion, Exhibit C at p. 5.
[12] AmendedMotion, Exhibit C at p. 6.
[13] Amended Motion at p. 1, "For purposes of this Motion, Plaintiffs need only address the first of these issues" [i.e., failure to accommodate].

9   -   **DEFENDANT'S RESPONSE TO PLAINTIFFS' SECOND MOTION FOR INJUNCTIVE RELIEF**

To plead a claim for failure to accommodate under 42 U.S.C. § 3604(f)(3)(B) the plaintiff must plead:

> (1) the plaintiff is a person with a disability within the meaning of the FHA or a person associated with that individual; (2) the plaintiff requested a reasonable accommodation for the disability; (3) the requested accommodation was necessary to afford the plaintiff an opportunity to use and enjoy the dwelling; and (4) the defendant refused to make the accommodation.

*Hunt v. Aimco Properties, L.P.,* 814 F.3d 1213, 1225 (11th Cir. 2016)[14] Harmony Haus has not shown any likelihood of success on the merits because neither the Amended Complaint nor the Amended Motion credibly alleges the second, third, and fourth elements of its accommodation claim.

Harmony Haus claims an accommodation with respect to parking is necessary for Harmony Haus to use and enjoy the dwelling because of the consequences of the now expired or locally loosened stay-at-home orders. As a result of these orders Harmony Haus claims that its residents "could not take any measures to move their vehicles elsewhere for purposes of complying with Defendant's parking restrictions."[15] As shown above this claim is not merely implausible but false. The parking rule may be inconvenient, but "necessary" for purposes of Section 3604(f)(3)(B) means that without the accommodation a disabled individual "likely will be denied an equal opportunity to

---

[14] *See also Astralis Condo. Ass'n v. Sec., U.S. Dept. of Hous. and Urb. Dev.,* 620 F.3d 62, 67 (1st Cir. 2010) ["To establish a prima facie case of failure to accommodate under the FHAA, a claimant must show that he is handicapped within the purview of 42 U.S.C. § 3602(h) and that the party charged knew or should reasonably have known of his handicap . . . . Next the claimant must show that he requested a particular accommodation that is both reasonable and necessary to allow him an equal opportunity to use and enjoy the housing in question . . . . Finally, the claimant must show that the party charged refused to make the requested accommodation. 42 U.S.C. § 3604(f)(3)(B); *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 336 (2d Cir.1995)." (internal citations omitted].

[15] Amended Complaint at ¶¶ 7 and 24.

enjoy the housing of [his] choice."[16] Given that many of the residents at Harmony Haus never leave the house at all (according to Harmony Haus) taking the time to organize parking so only the cars in frequent use are on the street or at the end of the driveway cannot plausibly be so hard to do that it will deny the residents an equal opportunity to enjoy the residence.

Nor is this a situation of selective enforcement or targeting. As shown in Exhibit 1-A, numerous homeowners other than the Residence have been sent violation letters and fined. Parkstone had also sent violation letters to the same homeowners for the Residence for parking violations years *before* Harmony Haus ever arrived in the community.

Separately, it is also evident from the Amended Complaint that the requested accommodation is not reasonable. Harmony Haus requested that Parkstone "waive the parking restrictions during the pendency of the shelter-in-place order."[17] It has now expanded that request to last as long as Harmony Haus wants based on its decisions about Covid-19. It is notable that Harmony Haus did not ask for some kind of partial or limited waiver of the parking restrictions that might make it more convenient for its residents; instead it demanded a complete waiver of all parking restrictions; in other words, the right to put as many cars as it wants on the street for as long as it wants with no conditions and no limitations.[18] While the Fair Housing Act requires reasonable accommodations,

> some accommodations may not be reasonable under the
> circumstances and some may not be necessary to the laudable

---

[16] *Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 541 (6th Cir. 2014).
[17] Amended Complaint at ¶¶ 11 and 28.
[18] The Court will recall that the accommodation requested in the original lawsuit was a blanket waiver of *all* of the requirements in the Declaration without conditions or restrictions, and that in the discussions leading up to trial Harmony Haus refused to even explain why a blanket waiver of the Declaration requirements might be necessary or even identify the particular requirements that concerned it. The request for a blanket waiver of the parking rule is similar. Harmony Haus wants its own way and will never compromise.

11 - **DEFENDANT'S RESPONSE TO PLAINTIFFS' SECOND MOTION FOR INJUNCTIVE RELIEF**

> goal of inclusion. The requirement of reasonable accommodation does not entail an obligation to do everything humanly possible to accommodate a disabled person; cost (to the defendant) and benefit (to the plaintiff) merit consideration as well.

*Bronk v. Ineichen,* 54 F.3d 425, 429 (7th Cir. 1995). A blanket waiver of the parking restriction is simply not reasonable, yet a blanket waiver is evidently the only thing Harmony Haus will settle for.

Because it wants *carte blanche* to park as it will, Harmony Haus complains that Parkstone's counter-offer to allow up to 4 cars on the street for more than 12 hours if the driveway and garage are full[19] is "unmanageable."[20] This is not true as shown above, but in any case it is Harmony Haus' burden to show that it requested a reasonable accommodation in the first instance, not that it was offered an unreasonable alternative to its unreasonable request. Harmony Haus never requested a reasonable accommodation in the first place and it has therefore failed to state a claim for refusal of a *reasonable* accommodation.

Finally, the Amended Complaint admits that Parkstone did not "refuse to make the requested accommodation." What Parkstone did was propose an alternative, thus initiating the "interactive process" required by the Fair Housing Act. Just as a housing provider cannot cut off the interactive process by "stonewalling" an accommodation request,[21] so a person requesting an accommodation must at least wait until the request

---

[19] Amended Complaint at ¶¶ 11 and 28.
[20] Amended Complaint at ¶ 28.
[21] *See, e.g., Astralis Condo. Ass'n v. Sec., U.S. Dept. of Hous. and Urb. Dev.,* 620 F.3d 62, 69 (1st Cir. 2010) and *Chavez v. Aber,* 122 F. Supp. 3d 581, 597 (W.D. Tex. 2015).

is refused before they can state a claim for refusal to accommodate.[22] In this case cutting off the interactive process by filing suit and seeking emergency relief was particularly wasteful because nothing about receiving violation notices interfered in any way with the operation of the sober living home. When the Complaint was filed there had been no enforcement action of any kind. Separately, Harmony Haus controls its own destiny – either follow the parking restrictions or pay the fines.

**III. Harmony Haus has not shown any threat of immediate irreparable harm.**

Harmony Haus argues that it will be irreparably harmed because if it "must pay fines for unavoidable violations of parking restrictions during the pendency of the current health crisis, they must inevitably close." (Amended Motion at p. 10). As noted above, violations are not "unavoidable." They are just the result of Harmony Haus being unwilling to make any effort to organize parking at the house in order to comply with the Declaration. There is also still no evidence that Harmony Haus will eventually be compelled to pay fines in the immediate future. Like other homeowners and residents Harmony Haus has been sent violation notices, but no suit has been filed by Parkstone to collect those fines and Harmony Haus has not alleged any other action *by Parkstone* that creates any kind of immediate threat. The eviction threat is from Zhou and Du *based on misconduct by Harmony Haus*.

Finally, the notion that because of the fines Harmony Haus "must inevitably close" has no support in the evidence. There are no financial statements or similar evidence to show that the fines, if paid, would create such a financial burden that Harmony Haus

---

[22] *See Schwarz v. City of Treasure Island,* 544 F.3d 1201, 1219 (11th Cir. 2008) ["Simply put, a plaintiff must actually request an accommodation and be refused in order to bring a reasonable accommodation claim under the FHA."].

13 - **DEFENDANT'S RESPONSE TO PLAINTIFFS' SECOND MOTION FOR INJUNCTIVE RELIEF**

could not operate. Since it should be trivially easy for Harmony Haus to show the Court its revenues and expenses, the unsupported claim of Mr. Ragette that the fines will put it out of business deserves no weight at all.

Moreover, as a matter of law, even if Harmony Haus had to pay fines, "[a]n injury is 'irreparable' only if it cannot be undone through monetary remedies."[23] If monetary damages can sufficiently compensate for any injuries, "the drastic solution of permanent injunction is unnecessary."[24]

Finally, the claim by Harmony Haus that the mere denial of its accommodation claim creates a presumption of irreparable harm, exaggerates the importance of this presumption. As the Eleventh Circuit has explained:

> A presumption, as used in a case such as this, is merely an evidentiary technique used to apportion the burdens at trial and to maximize the efficiency of the judicial process. Such a presumption, may, of course, be rebutted by evidence that any injury that may occur is not irreparable. *Thus, the real question in this case is whether the presumption of irreparable injury logically follows from a showing of a substantial likelihood that illegal discrimination has occurred.*

*Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417, 1423–24 (11th Cir. 1984) (emphasis added). This understanding of the presumption of harm requires that Harmony Haus explain why the presumption of irreparable injury "logically follows from a showing of a substantial likelihood that illegal discrimination has occurred." The leap from "we are not allowed to park 12 cars on the street 24 hours a day" to "the residents of Harmony Haus will have no place to live" is not merely illogical, it is absurd. The only consequence of the denial of Harmony Haus's requested accommodation is that if Harmony Haus chooses

---

[23] *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981).
[24] *DSC Commc'ns. v. Next Level Commc'ns*, 107 F.3d 322, 328 (5th Cir. 1997).

not to follow the parking rule it will continue to accumulate fines, but there is nothing irreparable about that. Eventually Harmony Haus will either prevail in litigation concerning those fines, in which case it will not have to pay them, or it will lose, in which case it never had a right to its requested accommodation in the first place. Either way it will not suffer an irreparable injury. The presumption of irreparable injury does not logically flow from the alleged discriminatory act and so it cannot substitute for proof of irreparable harm.

**IV. The threat to Parkstone outweighs any harm that Harmony Haus might suffer.**

The "threat" to Harmony Haus is that its landlord will evict it for violating its lease, a harm caused by its own misconduct and over which Parkstone has no control. The harm to Parkstone from the requested injunction, on the other hand, is immediate and real. If enjoined from enforcing the Declaration Parkstone will lose any ability to control how and where Harmony Haus decides to park. Twelve cars on the street twenty-four hours a day is a very real possibility given Harmony Haus's scofflaw attitude toward the Declaration. The harm to Parkstone of granting the injunction far outweighs the harm to Harmony Haus.

**V. The requested injunction is against the public interest.**

Parkstone agrees that enforcing the Fair Housing Act is in the public interest; however, enforcing the Fair Housing Act means denying claims that have no factual or legal merit just as much as means granting those that do. The interest of the public is always in the correct application of the law, and in this case the correct application of the Fair Housing Act requires that the Motion for Temporary Restraining Order and Preliminary Injunction be denied.

**VI. Counsel's alternative request to withdraw as counsel.**

Parkstone does not object to a withdrawal of representation by Plaintiffs' counsel. But the ethical issues should not turn on how this Court rules on the TRO. Indeed, Parkstone's understanding of Rule 1.06(b) of the *Texas Disciplinary Rules of Professional Conduct* concerning conflicts of interest requires that Plaintiffs' counsel withdraw immediately irrespective of whether the TRO is granted or denied. Zhou and Du are directly adverse to Harmony Haus and especially so due to the threat of litigation that has arisen between them. As noted above, a TRO will only stop what is not being done anyway; that is, efforts to collect fines through litigation. But it will not stop the accumulation of fines or the increasing financial risk to Zhou and Du which are adverse to Harmony Haus. Plaintiffs' counsel cannot possibly represent both a landlord whose interest is in suing for indemnity under the lease or other potential agreements between those parties and a tenant whose interest is in never paying the landlord at all.

## CONCLUSION AND PRAYER

For the reasons set out above the Amended Motion for Temporary Restraining Order and Preliminary Injunction should be denied.

Respectfully submitted,

NIEMANN & HEYER, LLP
Westgate Building, Suite 313
1122 Colorado Street
Austin, Texas 78701
Telephone: (512) 474-6901
Fax: (512) 474-0717

/s/ Eric J. Hansum
Eric J. Hansum, Of Counsel
Texas State Bar No.:  24027225
erichansum@niemannlaw.com

**ATTORNEYS FOR THE PARKSTONE PROPERTY OWNERS ASSOCIATION, INC.**

## CERTIFICATE OF SERVICE

I certify that on June 13, 2020, I electronically filed the foregoing with the clerk of the court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Eric J. Hansum*

Eric J. Hansum