UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| HARMONY HAUS WESTLAKE, LLC, et al., | ) ) ) | |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | Civil Action No.  1-20-CV-486-XR |
| PARKSTONE PROPERTY OWNERS ASSOCIATION, INC. | ) ) ) ) | |
| *Defendant.* | | |

<u>**ORDER ON MOTION TO DISMISS**</u>

On this date, the Court considered Defendant's motion to dismiss Plaintiffs' first amended complaint (docket no. 11), Plaintiffs' response (docket no. 12), and Defendant's reply (docket no. 16).[1] After careful consideration, Defendant's motion is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

This is a dispute between a sober living home and a homeowners association. Plaintiff Harmony Haus Westlake, LLC ("Harmony Haus") operates a "transitional sober living residence" located at 2105 Real Catorce Drive, Austin, Texas. Plaintiffs Ling Zhou ("Zhou") and Fenglin Du ("Du") own the residence which is located within the homeowners association operated by Defendant Parkstone Property Owners Association, Inc. ("Defendant").

This is not the parties' first time before this Court. In October 2019, Plaintiffs filed a claim (No. 1:19-CV-1034-XR) against Defendant, complaining that Defendant had refused to grant a

---

[1] Though largely overlapping with the arguments made in its second motion to dismiss, the Court also considered Defendant's reply to its first motion to dismiss, attached as an exhibit to the second motion to dismiss. *See* docket no. 11-1.

reasonable accommodation from its deed restrictions, in violation of the Fair Housing Act, 42 U.S.C. § 3601, *et seq.* ("FHA"). At issue in that case were three deed restrictions: a single-family use restriction, a noise and nuisance restriction, and a twelve-hour street parking restriction. Plaintiffs requested from Defendant an exemption from "any applicable HOA covenant, rule, or regulation relating to any restriction that would otherwise impede [Harmony Haus's] operations so that its residents can be provided an equal opportunity to use and enjoy their housing." Specifically, Plaintiffs sought for Defendant to allow up to twelve residents to live at the home and for eight cars to park on the street. In response, Defendant offered to allow up to six unrelated adults to live at the home.

A bench trial was held on January 6 and 7, 2020 after which the Court issued its Findings of Fact and Conclusions of Law. *See Harmony Haus Westlake, LLC v. Parkstone Prop. Owners Ass'n, Inc.*, __F. Supp. 3d__, 2020 WL 1241724 (W.D. Tex. Feb. 18, 2020). First, the Court found that the residents were handicapped as defined under the FHA because their "addictions substantially limit their ability to live independently and to live with their families," and their inability to live independently constitutes a substantial limitation on their ability to 'care for themselves.'" *Id.* at *5. Second, the Court found that the requested accommodation was necessary in that Plaintiffs showed the accommodation would "directly ameliorate" the disability's effect. *Id.* at *7. The Court found persuasive Plaintiffs' arguments that the accommodation of twelve residents was necessary for the residents to benefit from home's phasing system and to benefit from the increased accountability, structure, and support inherent in a larger number of residents. *Id.* at *8. The Court did not, however, find that Plaintiffs had shown the accommodation was financially necessary. *Id.* Third and finally, the Court found that Plaintiffs met their burden of showing that the requested accommodation was reasonable in that the accommodation did not

impose upon Defendant an "undue financial and administrative burden" and did not constitute a "fundamental alteration" to the character of the neighborhood. *Id.* at *9. The Court agreed with other federal courts who "have made clear that single family deed restrictions cannot be used to exclude group homes for disabled persons from single family neighborhoods." *Id.* (citing *United States v. Wagner*, 940 F. Supp. 972, 979 (N.D. Tex. 1996) (collecting cases)). As a result of those findings, the Court granted Plaintiffs' request for injunctive relief and ordered that:

> Defendant is enjoined from further refusing to make a reasonable accommodation that is necessary to afford Plaintiffs an equal opportunity to use and enjoy a dwelling. Consequently, Defendant is enjoined from enforcing its Declaration against Plaintiffs, but <u>solely</u> with respect to the single-family housing restriction, Section 2.1.

*Id.* at *10 (emphasis in original). The Court explicitly did not enjoin Defendant from enforcing its other restrictions at issue—the noise/nuisance and parking provisions—finding that Defendant "may enforce those if there are violations, though any such enforcement must be applied in an evenhanded manner that treats handicapped and non-handicapped residents alike." *Id.* at *11. The Court noted that:

> [n]othing here suggests that Harmony Haus residents have free reign to violate any provisions of the Declaration. Each resident is expected to know all relevant deed restrictions—including the parking and noise restrictions—and strictly adhere to them. Parkstone, in turn, is entitled to demand such strict adherence and, of course, may enforce the Declaration through its own enforcement mechanisms.

*Id.* at *10.

Despite that order[2], the dispute continues. Plaintiffs' First Amended Complaint in this case alleges that the dispute has worsened amidst the coronavirus pandemic and the various shelter-in-place ordinances imposed by state and local governments. The dispute is no longer about the

---

[2] Defendant has appealed the Court's findings, and Plaintiffs have appealed the Court's denial of attorney's fees. *See* 1:19-CV-1034-XR at docket nos. 31, 33 (docketed as Case Number 20-50185 and 20-50208). No order or opinion has been issued from those appeals.

number of residents Harmony Haus may maintain but, rather, about the enforcement of Defendant's parking restrictions, particularly during a pandemic which, Plaintiffs allege, has made compliance with those restrictions difficult if not practically impossible.

Plaintiffs allege that on March 3, 2020, two weeks after this Court issued its final judgment in the above case, Defendant "voted to enact newly revised restrictive covenants for the express purpose of targeting Plaintiffs." Docket no. 8 at 7. These new restrictions include new traffic and parking rules, as well as a new enforcement scheme with an escalating fine structure. *Id.* Plaintiffs believe that Defendant imposed these new rules and enforcement schemes "for the specific purpose of targeting Plaintiffs and individuals with disabilities in general." *Id.* In support, Plaintiffs allege that prior to the Court's issuance of final judgment in the previous case, Defendant made little effort to enforce the then-existing parking restrictions, "such that its post-judgment enforcement efforts clearly arose as a response to the judgment."[3] In further arguing that Defendant was intentionally targeting Plaintiffs and those with disabilities, Plaintiffs allege that Defendant enacted a new provision that preemptively disallows any reasonable accommodation request with respect to the single-family use restriction for any residence within 1,000 feet of the Harmony Haus residence. *Id.* at 2–3. Finally, Plaintiffs allege that a "barrage of profanity" and "facially discriminatory remarks by [Parkstone] Board members" further reveal intentional discrimination and retaliation. *Id.* at 5.

Soon after Defendant imposed the new fine structure, the coronavirus pandemic emerged. When the City of Austin issued its shelter-in-place order on March 24, Plaintiffs allege that the Harmony Haus residents "could not go to work or engage in any other activity outside the

---

[3] Plaintiffs further allege that "[o]n information and belief, many of the alleged [parking] violations were not violations at all." *Id.* at 8.

residence" (unless expressly permitted by the shelter-in-place order) and that residents "could not take any measures" to move their vehicles off the street to avoid violating Defendant's street-parking restriction. *Id.* at 4. The Governor of Texas lifted that shelter-in-place order on May 1, but, Plaintiffs allege, many residents continue to work from home given the nature of their occupations and the compromised immune systems of some residents which make them particularly vulnerable to COVID-19. *Id.* Thus, Plaintiffs allege, the effects of the pandemic—namely, the number of residents who do not leave the house—continues despite the end of the official shelter-in-place order, such that the conclusion of that order does not moot Plaintiffs' request for relief.

On March 31, Plaintiffs allege that they requested a reasonable accommodation from Defendant, requesting a waiver of the twelve-hour street-parking restriction during the course of the shelter-in-place order. Defendant allegedly "countered with an offer to allow four vehicles to park on the street during the pendency of the order, but only if the driveway and garage were fully utilized at all times." *Id.* at 5. This would require Plaintiffs to have eight cars parked in the driveway and garage at all times, meaning if one resident removed his car from the driveway, another resident would have to move his car from the street to keep the driveway at maximum "occupancy" before any more-than-twelve-hour street parking would be permissible. Plaintiffs counter that they "cannot (1) keep eight vehicles in the driveway and garage…or (2) move all the vehicles in and out of the driveway every time a resident has to leave." *Id.* They point to Defendant's concern in the previous litigation that the noise involved in moving cars in and out of the driveway was bothersome to neighbors. *Id.* With the escalating fee structure now in place, Plaintiffs allege that as of May 17, 2020, Defendant had assessed fines totaling $23,650.00. *Id.* at 3. These escalating fines, Plaintiffs allege, have stymied Plaintiffs Zhou and Du's efforts to sell the property. They claim that without relief, "their inability to sell the Residence will continue

unabated." *Id.* at 11. Those fines have also placed a wedge between the two groups of Plaintiffs—that is, between Harmony Haus on the one hand and Zhou and Du on the other—with the owners now expressing an intent to evict Harmony Haus if the residents do not "stop the parking violations." *See* docket no. 13-5 at 2.

On May 5, Plaintiffs sought a temporary restraining order and preliminary injunction from this Court, seeking to enjoin Defendant from enforcing its parking restriction against Harmony Haus (or collecting fines imposed on the basis of violations) "until further order of this Court." Docket no. 2 at 16. After a hearing on May 12, 2020, this Court denied Plaintiffs' motion, finding that Plaintiffs had not shown that they would suffer irreparable injury. *See* Text Order, May 12. Thereafter, on June 10, 2020, Plaintiffs filed a second motion for a temporary restraining order, alleging that now Plaintiffs faced irreparable harm because Plaintiffs Zhou and Du expressed an intention to evict Plaintiff Harmony Haus from the property if the violations continued. Docket no. 13. At a hearing on June 17, 2020, the Court denied that motion, finding that Plaintiffs had not demonstrated a substantial likelihood of success on the merits. *See* Text Order, June 17.

## ANALYSIS

### I.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, a plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the complaint does not need to contain detailed factual

allegations, it must contain enough factual allegations to "raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555. The plaintiff has an obligation to present more than labels, conclusions, and formulaic recitations of the elements to avoid dismissal. *Id.* In considering a Rule 12(b)(6) motion, the Court must accept the factual allegations in the complaint and take them in the light most favorable to the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, the court does not accept conclusory allegations or unwarranted deductions of fact as true. *Tuchman v. DSC Commc'ns. Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).

## II.    Application

The FHA is a "clear pronouncement of a national commitment to end the unnecessary exclusion of persons with handicaps from the American mainstream," and "[g]eneralized perceptions about disabilities and unfounded speculations about threats to safety are specifically rejected as grounds to justify exclusion." *Groome Res., Ltd., L.L.C. v. Par. of Jefferson*, 234 F.3d 192, 201 (5th Cir. 2000) (quoting H.R. REP. 100–711, at 18 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2173, 2179). In general, the language of the FHA is "broad and inclusive" and its terms must be given a generous construction to adhere to the statute's remedial scope. *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972); *Francis v. Kings Park Manor, Inc.*, 944 F.3d 370, 376 (2d Cir. 2019).

Plaintiffs bring four claims under the FHA: (1) discrimination in the sale or rental, or otherwise making unavailable, a dwelling because of a disability, in violation of 42 U.S.C. § 3604(f)(1); (2) discrimination in the terms, conditions, or privileges of a dwelling, or in the provision of services or facilities in connection with that dwelling, in violation of § 3604(f)(2); refusal to make a reasonable accommodation in violation of § 3604(f)(3)(B); and (4) intimidation, threat, or interference with the exercise or enjoyment of a right protected by the FHA, in violation

of § 3617. Plaintiffs claim that these actions were retaliatory, intentional, and "taken in wanton disregard" of Plaintiffs' rights. Docket no. 8 at 12. Defendant moves to dismiss all four claims under Rule 12(b)(6), arguing Plaintiffs have failed to state a claim. The Court addresses each of Plaintiffs' claims in turn.

### a.   Intentional Discrimination: § 3604(f)(1)

42 U.S.C § 3604(f)(1) makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of that buyer or renter, a person residing in or intending to reside in that dwelling…, or any person associated with that buyer or renter." 42 U.S.C. § 3604(f)(1)(A)-(C).[4] Section 3604(f)(1) is a "catch-all provision" intended "to cover other ways that an individual may make housing unavailable to the disabled beyond" the specific types of discrimination listed in § 3604(f)(3)(C). *Fair Hous. Council, Inc. v. Vill. of Olde St. Andrews, Inc.*, 210 F. App'x 469, 481 (6th Cir. 2006). To survive a motion to dismiss on such a claim, a plaintiff must allege "(1) that an adverse action making the [dwelling] unavailable occurred, (2) that the action was taken against someone with a 'handicap,' and (3) 'that the adverse action was taken because of a [handicap].'" *Lee v. Retail Store Employee Bldg. Corp.*, No. 15-CV-4768, 2017 WL 346021, at *10 (N.D. Cal. Jan. 24, 2017) (citing *Hunt v. Aimco Props. L.P.*, 814 F.3d 1213, 1221–25 (11th Cir. 2016)).

Plaintiffs claim that Defendant engaged in such intentional discrimination through its "new fines and enforcement scheme" as well as its refusal to grant a "reasonable accommodation" during

---

[4] For FHA protection, the plaintiff must also first show that the persons at issue are "handicapped." The Court, considering that very question, has already determined that the residents qualify as handicapped for FHA purposes, and though Parkstone raises that issue on appeal, it concedes the handicapped status for this case. *See Harmony Haus*, 2020 WL 1241724, at *5; *see also* docket no. 11 at 8–9. Similarly, the Court previously concluded that the Real Catorce residence qualifies as a "dwelling" for FHA purposes. *Id.*

the pandemic. Docket no. 12 at 15.[5] Plaintiffs argue that "Defendant's actions will render the Residence unavailable both to its current Residents" and to any future residents. *Id.* In its motion to dismiss this claim, Defendant argues that § 3604(f)(1) covers conduct that directly makes a dwelling unavailable, not conduct which may, as a side effect, make it more difficult for the handicapped person to remain in the dwelling. *See* docket no. 11-1 at 5. Plaintiffs respond that "by imposing an accelerating fine structure, Defendant has specifically targeted [Plaintiffs] and has placed them in a position in which they will have no choice but to close the Residence." Docket no. 12 at 17. In other words, Plaintiffs argue that Defendant "will cause the sober living residence to close, thus directly rendering the housing unavailable…." *Id.*

Here, there is no showing that Defendant attempted to make the dwelling unavailable to Plaintiffs due to their handicap, i.e. that an adverse action was taken *because of* Plaintiffs' handicap status. The allegedly adverse actions—the institution of the new escalating fine structure and enforcement thereof—may ultimately make the dwelling unavailable to Harmony Haus residents if the fines continue to accrue, but there is no basis from which the Court could plausibly find that those actions were *because of* Plaintiffs' status as addicts in recovery. Rather, Defendant appears to have been following this Court's prior Findings of Fact and Conclusions of Law in which the Court wrote that "[e]ach resident is expected to know all relevant deed restrictions—including the parking and noise restrictions—and <u>strictly</u> adhere to them. Parkstone, in turn, is entitled to demand such <u>strict</u> adherence and, of course, may enforce the Declaration through its own enforcement mechanisms." *Harmony Haus*, 2020 WL 1241724, at *10 (emphasis added).[6]

---

[5] The failure to make a reasonable accommodation is treated separately below under 42 U.S.C. § 3604(f)(3)(B). Here, then, the focus is solely on whether Defendant discriminated against Plaintiffs in the new fines and enforcement scheme.

[6] There is no allegation that the restrictions themselves have changed since the Court's previous order. The

Whether Defendant should have done so during the course of a pandemic is a separate question, treated below under § 3604(f)(3)(B)'s reasonable accommodation framework, but as for intentional discrimination, it appears that Defendant was doing nothing more than following this Court's prior directive in which it counseled that Plaintiffs should know the restrictions and Defendant can demand "strict adherence" to the restrictions. *Id.* Defendant did not impose the fines because Plaintiffs are handicapped; rather, Defendant imposed the fines because Plaintiffs repeatedly violated the parking restrictions.

Further, as to "unavailability" under § 3604(f)(1), the Court cannot plausibly find that Defendant "directly rendered" the housing unavailable as Plaintiffs allege. Docket no. 12 at 17. Rather, Plaintiffs' inability to abide by the relevant deed restrictions—whether justified by the pandemic or not—was the direct cause of the fines. Were the Court to adopt Plaintiffs' position, that Defendant "directly caused" any unavailability, *any* fine imposed for a violation of *any* deed restriction (or for that matter, any fee imposed on Plaintiffs, even if not for a fine) would be susceptible to a § 3604(f)(1) claim because under Plaintiffs' argument, any fine or fee that makes it financially difficult to maintain the residence would thereby constitute prohibited discrimination. The Court is not able to find that such fines constitute discrimination "because of a handicap," even if such fines have the effect of burdening Plaintiffs financially.

Plaintiffs cite to *Petty* for the proposition that a disabled plaintiff may state a claim under § 3604(f)(1) by alleging that the defendant sent fine letters for violations instead of making a reasonable accommodation. *See* docket no. 12 at 17 (citing *Petty v. Portofino Council of Coowners, Inc.*, 702 F. Supp. 2d 721 (S.D. Tex. 2010)). The alleged discrimination in *Petty*,

---

twelve-hour parking restriction remains the same, but compliance with it has become more difficult throughout the pandemic. What has changed is Defendant's method of enforcing those same restrictions.

however, was significantly more far-reaching than merely fining the plaintiff. There, the defendant intentionally discriminated against the plaintiff by: disabling the plaintiff's phone, demanding the plaintiff remove his service dog from the condominium, refusing to install a pedestrian exit, failing to fix an electronic gate, issuing "fines without reason," telling potential buyers of plaintiff's condo that plaintiff was a "person of interest" with "multiple criminal violations" (thereby scaring off the potential buyers), and prohibiting service dogs and children from common areas. *Petty*, 702 F. Supp. 2d at 725–26. There are, then, two distinctions from *Petty*: first, the allegedly adverse actions there were more far-reaching than those in this case, and second, the fines at issue there were imposed "without reason" whereas the fines here were imposed for violating the parking restrictions.

Similarly, Plaintiffs raise *Castillo* as showing that "threatening fines" may constitute making housing unavailable "as a practical matter." Docket no. 12 at 17 (citing *Castillo Condo. Ass'n v. U.S. Dep't of Hous. and Urb. Dev.*, 821 F.3d 92 (1st Cir. 2016)). But in *Castillo*, the First Circuit did not find that the fines caused the unavailability; rather, the defendant's refusal to allow the plaintiff to keep his service animal caused the unavailability. *Castillo*, 821 F.3d at 98 ("[S]ubstantial evidence supports the Secretary's finding that the Association's refusal to allow Gimenez to keep an emotional support dog in his condominium unit as a reasonable accommodation for his disability was unlawful. That refusal made Gimenez's home unavailable to him as a practical matter and, thus, violated the [FHA]."). Thus, the FHA violation was the refusal to make a reasonable accommodation, not the mere imposition of fines.

The Court finds that Plaintiffs have failed to plead a plausible claim of intentional discrimination under § 3604(f)(1), and thus grants Defendant's motion to dismiss this claim.

11

### b. Disparate Treatment: § 3604(f)(2)

42 U.S.C. § 3604(f)(2) makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap" of that person, a person living in the dwelling, or any person associated with that person. 42 U.S.C. § 3604(f)(2)(A)-(C). A plaintiff can survive a motion to dismiss such a disparate treatment claim "if the plaintiff can allege facts that support a plausible claim that the plaintiff was a member of a protected class, suffered relevant adverse treatment, and can sustain a minimal burden of showing facts suggesting an inference of discriminatory motivation." *Conn. Fair Hous. Ctr. v. Corelogic Rental Prop. Sols., LLC*, 369 F. Supp. 3d 362, 376 (D. Conn. 2019) (citing *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)). "[T]he most fundamental element" of a disparate treatment claim under § 3604(f)(2) "is that [the] plaintiff must demonstrate that [the] defendant's alleged discrimination was 'because of a handicap.'" *Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 178 (3d Cir. 2005) (quoting 42 U.S.C. § 3604(f)(2)); *see also Caron Found. of Fl. v. City of Delray Beach*, 879 F. Supp. 2d 1353, 1367 (S.D. Fla. 2012) ("To prove disparate treatment, the plaintiff must show the defendant in fact intended to discriminate or was improperly motivated in making the discriminating decision.").

Plaintiffs claim that the enforcement scheme was designed to target Harmony Haus residents and that although Defendant may enforce the parking restrictions against other Parkstone residents, Defendant only does so "to give the appearance of evenhanded enforcement." Docket no. 12 at 18. Plaintiffs also claim that the parking restrictions were not seriously enforced until after this Court's prior judgment. Docket no. 8 at 7–8. Defendant argues that that Plaintiffs have failed to either plead direct evidence of discriminatory intent or allegations of disparate treatment

sufficient to give rise to an inference of discriminatory intent. Docket no. 11-1 at 7–8. Defendant argues that "[w]ithout a pleading that Harmony Haus is being treated differently than other residents[,] it fails to state [a] claim under Section 3604(f)(2) for disparate treatment…." *Id.* at 8.

The analysis here is the same as § 3604(f)(1): Plaintiffs have not plausibly shown that Defendant took any adverse actions "because of" Plaintiffs' handicap. *Wind Gap*, 421 F.3d at 178. Defendant decided to strictly enforce its parking restrictions—as this Court made clear Defendant could do—and fines imposed on the basis of those restrictions were because of Plaintiffs' failure to abide by those restrictions, not because of Plaintiffs' status as recovering addicts. In other words, Plaintiff pleads nothing showing that Defendant would not have taken (or did not take) the very same actions—strict enforcement—against a non-handicapped group of persons who similarly violated the parking restrictions.

And indeed, Plaintiffs seem to concede that Defendant has enforced the parking restrictions against others, thus undermining the requirement in a disparate treatment claim "to show that [the plaintiff] has actually been treated differently than similarly situated non-handicapped people." *See* docket no. 8 at 8 ("Although Defendant has claimed that it is now enforcing these restrictions with respect to others in the neighborhood as well, Defendant appears to engage in this practice for the sole purpose of allowing it to target Plaintiffs with hoped-for impunity."); *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1216 (11th Cir. 2008). To the extent Plaintiffs claim that such generally applicable enforcement may represent "a willingness to inflict collateral damage" while giving "the appearance of evenhanded enforcement," docket no. 12 at 18, Plaintiffs still fail to plead "the most fundamental element" of a disparate treatment claim: that any such treatment was *because of* their handicap. *Wind Gap*, 421 F.3d at 178.[7] "This requirement, plainly read from the

---

[7] In making this argument, Plaintiffs rely on *Pacific Shores*. *See* docket no. 12 at 18 (citing *Pac. Shores*

language of the [FHA], is very often glossed over or, perhaps, so obvious as not worthy of discussion," *id.*, but it is nonetheless crucial and determinative here. The statute prohibits discrimination "because of a handicap," 42 U.S.C. § 3604(f)(2), and Plaintiffs have not plead any such discrimination.

Because Plaintiffs have failed to state a plausible claim for disparate treatment under § 3604(f)(2), the Court will grant Defendant's motion to dismiss this claim.

### c.  Failure to Accommodate: § 3604(f)(3)(B)

42 U.S.C. § 3604(f)(3)(B) prohibits the "refusal to make [a] reasonable accommodation in rules, policies, practices, or services, when such accommodations may be necessary to afford [handicapped persons] equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B); *see also City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 729 (1995). Thus, if a person is handicapped under the FHA,[8] he or she must show that the requested accommodation was reasonable and necessary, and that the defendant refused to make such an accommodation. *See Groome Res.*, 234 F.3d at 200 n.9 (5th Cir. 2000). Though the language of the FHA is "broad and

---

*Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1158 (9th Cir. 2013)). In that case, the plaintiff provided evidence of discriminatory intent underlying the enactment of the generally applicable ordinance, such that the court could infer discrimination despite the "over-discrimination" or broad and neutral sweep of the ordinance. *See id.* at 1149 (noting that in enacting the ordinance at issue, the city council made clear that the "focus" of the ordinance needed to be against the recovery homes at issue, even if its sweep was broad enough to encompass other homes, such as vacation homes). The underlying discriminatory intent, then, was clear, even if the law over-discriminated by sweeping in non-protected persons. Here, as explained above, there is no such evidence of discrimination on the basis of the handicap sufficient to allow the Court to infer disparate treatment despite the neutral applicability of the parking restriction. There is merely the strict enforcement of a parking restriction, and that is precisely what this Court found that Defendant could do. *Harmony Haus*, 2020 WL 1241724, at *10 ("Each resident is expected to know all relevant deed restrictions—including the parking and noise restrictions—and strictly adhere to them. Parkstone, in turn, is entitled to demand such strict adherence and, of course, may enforce the Declaration through its own enforcement mechanisms.").

[8] As described above, *see supra* note 4, though Defendant appeals that finding from this Court's prior order, for purposes of this litigation, it concedes that Plaintiffs are handicapped. *See* docket no. 11 at 8–9.

inclusive" and should be given a generous construction, *see Trafficante*, 409 U.S. at 209, the FHA is not intended to provide "carte blanche" to the handicapped "to determine where and how they would live regardless of" the ordinances or restrictions at issue. *Bryant Woods Inn, Inc. v. Howard Cty. Md.*, 124 F.3d 597, 603 (4th Cir. 1997); *see also Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir. 1995) ("The requirement of reasonable accommodation does not entail an obligation to do everything humanly possible to accommodate a disabled person; cost (to the defendant) and benefit (to the plaintiff) merit consideration as well.").

To state a claim under § 3604(f)(3)(B), the plaintiff must first prove that the requested accommodation was necessary; to do so, he or she "must show that, but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice." *Harmony Haus*, 2020 WL 1241724, at *7 (quoting *Smith & Lee Assocs., Inc. v. City of Taylor, Mich.*, 102 F.3d 781, 795 (6th Cir. 1996)). That is to say, plaintiffs must show a link between the proposed accommodation and the equal opportunity being sought. *Id.*; *see also Bronk*, 54 F.3d at 429 ("[T]he concept of necessity requires at a minimum the showing that the desired accommodation will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability."). A plaintiff may also use financial viability as a means of proving necessity, but the desire to gain more profit—without more—does not satisfy the necessary element, at least where the plaintiff has not shown financial <u>un</u>viability without the requested accommodation. *Bryant Woods Inn*, 124 F.3d at 605.

Second, the plaintiff must also show that the requested accommodation was reasonable; an "accommodation is 'reasonable' under the FHA unless it imposes an undue financial and administrative burden on the defendant or requires a fundamental alteration in the nature of the program at issue." *United States v. City of Jackson, Miss.*, 318 F. Supp. 2d 395, 412 (S.D. Miss.

2002), *aff'd* 359 F.3d 727 (5th Cir. 2004). In determining the reasonableness of an accommodation, a court may consider whether there are alternatives that would accomplish the benefits more efficiently, *Bryant Woods*, 124 F.3d at 604, and the court must balance of the needs of all parties involved. *United States v. Vill. of Palatine, Ill.*, 37 F.3d 1230, 1234 (7th Cir. 1994).

Finally, the plaintiff must prove that the defendant "refused" the requested accommodation. Such a denial of the requested accommodation "can be both actual or constructive." *Groome Res.* 234 F.3d at 199. Such "constructive" denial may be found, for instance, where the defendant fails to make a timely determination after meaningful review. *Id.*

Considering first whether the accommodation was necessary, Defendant argues that the requested accommodation—waiving the street-parking restriction and collection of fines imposed thereof—is not necessary in that compliance with the restriction may be challenging for Plaintiffs, but that it is not *necessary* for Plaintiffs to use and enjoy the dwelling. Docket no. 11 at 9. In response, Plaintiffs argue that the Harmony Haus residents "cannot safely comply with the parking restrictions" during the coronavirus pandemic, and that the accommodation is necessary insofar as it "ameliorates" the disability at issue. Docket no. 12 at 21. The Court agrees with Defendant that Plaintiffs have not shown the accommodation is necessary but, rather, have merely shown that the street-parking restriction is inconvenient. Two reasons underlie this finding: first, the basis of Plaintiffs' request for a waiver—the pandemic requiring residents to stay at home more often, thus requiring more street parking—cuts against a finding that an accommodation from the street-parking restriction is necessary. Defendant's proposed counter-accommodation allows four cars to park on the street (in violation of the twelve-hour parking rule) so long as the driveway and garage are full; if many residents are not leaving the house due to the coronavirus pandemic, then logically there should be fewer cars which Plaintiffs would need to rearrange in the driveway to comply

with the counter-accommodation. Second, the restriction itself does not require that Plaintiffs *immediately* move a car from the street to the driveway as soon as a spot in the driveway opens up; rather, the restriction merely requires that Plaintiffs do so within the twelve hours mandated by the restriction. Indeed, nothing in the restriction itself limits the number of cars that may park on the street, but rather limits those that may be parked on the street *for more than twelve hours*. The Court, then, finds that though the Plaintiffs' requested accommodation may be convenient to Plaintiffs—and that compliance with the restriction may be inconvenient—an accommodation is not necessary to ameliorate their handicap.

Nor is the requested accommodation reasonable. Plaintiffs requested a blanket waiver from the street-parking restriction "until further order of the Court." Just as the Court previously found in denying Plaintiffs' request for an exception from *all* relevant deed restrictions, the FHA does not mandate that a housing provider grant such a "carte blanche" exception. *Harmony Haus*, 2020 WL 1241724, at *7. In determining whether the requested accommodation is reasonable, the Court "may consider whether there are alternatives that would accomplish the benefits more efficiently." *Bryant Woods*, 124 F.3d at 604. Defendant's proposed counter-accommodation would accomplish the sought-after benefits more efficiently by relaxing the twelve-hour parking restriction but for only four cars.

Plaintiffs argue that the request is reasonable in that "the moratorium is temporary and lasts only as long as the current health crisis," that current circumstances do not allow the residents to leave the home often because of either remote employment or compromised immune systems, the residents "cannot scurry outside to move cars around every time someone leaves," and that "the purely aesthetic sensibilities of Defendant cannot weigh as heavily" as the needs of Plaintiffs during a pandemic. Docket no. 12 at 20–21. These arguments are not persuasive. First, Plaintiffs'

contentions contradict one another: if the pandemic keeps many residents at home more often (the basis for the requested accommodation), then compliance with Defendant's counter-accommodation cannot be sufficiently difficult so as to justify a carte blanche exception from the street-parking restrictions. If residents are not often leaving, then residents will not often need to "scurry outside to move cars around." Second, as described above, Plaintiffs must merely ensure that cars parked on the street are not there for *more than twelve hours*; the restriction does not mandate that a resident immediately move a car into the driveway when another resident leaves. Finally, Plaintiffs' contention that the request is reasonable because "the moratorium is temporary and lasts only as long as the current health crisis" is unpersuasive because the duration of the pandemic is unknown, leaving the requested moratorium entirely open-ended and of potentially long duration. Requesting that the accommodation last "until further order of this Court" places a burden on both parties to return to this Court to "end" the accommodation, and places a burden on this Court to divine whether the public health circumstances have sufficiently abated so as to justify ending the moratorium.[9]

For all of these reasons, the Court finds Plaintiffs have failed to state a plausible claim of failure to accommodate under § 3604(f)(3)(B), and thus grants Defendant's motion to dismiss this claim.

### d.  Retaliation: § 3617

42 U.S.C. § 3617 makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of" any right separately protected by the FHA. 42 U.S.C. § 3617; *see also Evans v. Tubbe*, 657 F.2d 661, 663 n.3 (5th Cir. 1981). A claim under this section

---

[9] Because the Court finds that the requested accommodation is neither reasonable nor necessary, it need not consider whether Defendant "refused" the requested accommodation, though the fact that Defendant has continued fining Plaintiffs for parking violations does reveal a refusal, even if not explicit.

is not limited to circumstances which involved "potent force or duress," but rather "extends to other actors who are in a position directly to disrupt the exercise of enjoyment of a protected right and exercise their powers with a discriminatory animus." *Texas v. Crest Asset Mgmt. Inc.*, 85 F. Supp. 2d 722, 732–33 (S.D. Tex. 2000). In analyzing § 3617, "'interference' has been broadly applied to reach all practices which have the effect of interfering with the exercise of rights under federal fair housing laws." *Walker v. City of Lakewood*, 272 F.3d 1114, 1129 (9th Cir. 2001) (finding retaliation under § 3617 where, in part, the city "supervised [the plaintiff] more closely than it had before").

Such "[r]etaliation claims brought pursuant to [§ 3617] are analyzed under the same standards that are applied to retaliation claims brought under Title VII and other employment discrimination statutes." *Chavez v. Aber*, 122 F. Supp. 3d 581, 599 (W.D. Tex. 2015) (citing *Crest Asset Mgmt., Inc.*, 85 F. Supp. 2d at 733); *see also Holt v. JTM Indus., Inc.*, 89 F.3d 1224, 1229 (5th Cir. 1996) (noting the "strong similarities" between the language, design, and purposes of Title VII and the [FHA]"). Therefore, to state a claim for retaliation, a plaintiff must demonstrate that "(1) he engaged in an activity that [the FHA] protects; (2) he was subjected to an adverse [action by the defendant]; and (3) a causal connection exists between the protected activity and the adverse…action." *Cox v. Phase III, Invs.*, No. H-12-3500, 2013 WL 3110218, at *10 (S.D. Tex. June 14, 2013). Importantly, a finding of discrimination is not necessary for a finding of retaliation; in other words, a retaliation claim may survive even if there is no plausible discrimination claim. *Wilson v. Wilder Balter Partners, Inc.*, No. 13-CV-2595, 2015 WL 685194, at *12 (S.D.N.Y. Feb. 17, 2015) (citing *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs P.C.*, 716 F.3d 10, 14 (2d Cir. 2013)); *see also Oxford House v. City of Baton Rouge*, 932 F. Supp. 2d 683, 701 (M.D.

19

La. 2013) (same). The defendant may take the same adverse action in retaliation for a plaintiff's FHA-protected activity while still not taking it *because of* the plaintiff's handicap.

Defendant's argument here is simple: Plaintiffs fail at the first element because they have not "engaged in a protected activity," as they have "already tried and failed to persuade the Court that the twelve hour parking rule violated the FHA." Docket no. 11 at 12. While it is true that violating the parking restriction is not itself a protected activity, both requesting a reasonable accommodation and filing a lawsuit in pursuit thereof constitute protected activities. *Oxford House*, 932 F. Supp. 2d at 700 (citing *Gonzalez v. City of New York*, 354 F. Supp. 2d 327, 340 (S.D.N.Y. 2005) (filing lawsuit is a protected activity for a retaliation claim)); *Chavez*, 122 F. Supp. 3d at 599–600 (requesting reasonable accommodation is a protected activity for a retaliation claim). Plaintiffs, therefore, engaged in two protected activities covered by the FHA, satisfying the first element.

Plaintiffs have also shown that Defendant took an adverse action which is "causally connected" to the protected activities. Only two weeks after this Court issued its judgment for Plaintiffs in the prior case, Defendant instituted a new enforcement scheme with an escalating fine structure which, even though not discriminatory, may ultimately be found retaliatory for Plaintiffs requesting a reasonable accommodation and filing suit. The timing of Defendant's actions raises the possibility that the actions were taken in response to Plaintiffs' protected activities.[10] In considering whether a defendant's actions were retaliatory, a court may consider whether the

---

[10] So, too, does Plaintiffs' allegation that many of the alleged violations were not, in fact, violations. Docket no. 8 at 8. Further, the "barrage of profanities" from Defendant's Board members, as well as the new deed restriction forbidding any requested accommodation from the group-home restriction for houses within 1,000 feet of Harmony Haus, further point towards Defendant having engaged in retaliation, though neither appears harmful enough (or harmful at all, in the case of the new deed restriction) to constitute an "adverse action" for purposes of retaliation.

temporal proximity between the request for an accommodation and the defendant's allegedly retaliatory behavior is "sufficient to state that a causal connection exists between the protected activity and the adverse action." *Chavez*, 122 F. Supp. 3d at 600 (citing *Cox*, 2013 WL 3110218, at \*10); *see also Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) ("Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation [under Title VII]."). Here, Defendant instituted the new enforcement scheme approximately two weeks after this Court issued its Findings of Fact and Conclusions of Law, which found that Defendant had engaged in discrimination in its refusal to make a reasonable accommodation. *See Chavez*, 122 F. Supp. 3d at 600 (finding that two weeks between an FHA-protected activity and an adverse action was "sufficient to state that a causal connection exists between the protected activity and the adverse action").

Defendant responds by arguing that it "proved with its earlier offer that it is not opposed to sober living facilities." Docket no. 11-1 at 9. But the Court previously found that Defendant *did* engage in discrimination under the FHA in its refusal to make a reasonable accommodation. *Harmony Haus*, 2020 WL 1241724, at \*10. Defendant also claims that if this Court found its actions were retaliatory, "every effort at enforcement would be met by the claim that the motive was not *really* the admitted violation of the rules, but rather retaliation for operating the sober living facility." Docket no. 11-1 at 9. That argument is misguided; in denying the motion to dismiss on the retaliation claim, the Court is not finding that Defendant's actions were retaliatory but is merely finding that it is plausible. Further, the mere fact that Defendant enforced its rules it not at issue; the Court previously reminded both parties that Defendant could strictly enforce its rules. That has not changed. But at issue are Defendant's enactment of a *new* enforcement scheme which,

21

coupled with the "close temporal proximity" to the previous accommodation request and lawsuit, raises the possibility that Defendant's actions were in retaliation for Plaintiff's having engaged in those FHA-protected activities.

In sum, Plaintiffs engaged in activities protected by the FHA—requesting a reasonable accommodation and filing suit thereon. Defendant enacted a new enforcement scheme with an escalating fine structure, and the temporal proximity between the protected activities and that adverse action raises the possibility that such action was taken in retaliation for the protected activities. As described above, the allegations do not state a claim for *discrimination* because there is no indication Plaintiffs were targeted *because of* their status as addicts, i.e. their handicap. But the allegations do state a claim for retaliation because it is plausible that the adverse action was taken because of Plaintiffs' FHA-protected activities: requesting a reasonable accommodation and filing suit. The Court will thus deny Defendant's motion to dismiss Plaintiffs' claim of retaliation under § 3617.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (docket no. 11) is GRANTED IN PART and DENIED IN PART. Plaintiffs' claims under 42 U.S.C. §§ 3604(f)(1), 3604(f)(2), and 3604(f)(3)(B) are dismissed. Plaintiffs' claim for retaliation under 42 U.S.C. § 3617 remains.

It is so ORDERED.

SIGNED this 23rd day of June, 2020.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE