IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| HARMONY HAUS WESTLAKE, L.L.C., et al., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL NO. 1-20-CV-486-XR |
| PARKSTONE PROPERTY OWNERS ASSOCIATION, INC., | § § § § | |
| Defendant. | § § § | |

**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiffs Harmony Haus Westlake, L.L.C., Ling Zhou, and Fenglin Du hereby submit their Plaintiffs' Motion for Partial Summary Judgment. Plaintiffs move for partial summary judgment with respect to the damages components of Defendants' counterclaims. Defendants assert two claims against Plaintiffs, one for statutory damages under Tex. Prop. Code § 202.004(c) and one for breach of contract damages based on a theory that Plaintiffs breached restrictive covenants imposed by Defendant. However, as explained below, the damages remedies Defendant seeks through these claims are not available. Consequently, Defendant's claims lack viability as a matter of law with respect to such damages remedies. This Court should grant partial summary judgment with respect to the damages remedies Defendant seeks through its counterclaims.

**I.     BACKGROUND FACTS**

Plaintiff Harmony Haus operates integrative transitional sober living residences in the Hyde Park and Westlake areas of Austin, Texas. *Harmony Haus Westlake, LLC v. Parkstone Prop. Owners Ass'n* ("*Harmony Haus I*"), 440 F. Supp. 3d 654, 657 (W.D. Tex. 2020).

1

Specifically, it operates such a residence at 2105 Real Catorce Drive, Austin, Texas 78746 (the "Residence"). *Harmony Haus I*, 440 F. Supp. 3d at 658. As individuals recovering from drug addiction and unable to live alone and care for themselves successfully, the residents of the Residence (the "Residents") are qualified persons with a disability under the FHA. *Id.*, at 663-4. The Residence is located within the homeowners' association operated by Defendant Parkstone Property Owners Association, Inc. (the "Parkstone POA"). *Id.*, at 657-8. Ling Zhou and Fenglin Du own the Residence. *Id.*, at 658.

On October 22, 2019, Plaintiffs filed a complaint in this Court in Cause No. 1:19-cv-01034, complaining, among other things, that Defendant had discriminated against them by refusing to grant them a reasonable accommodation from the restrictive covenants, regulations, and/or rules which would impede its operation and have the effect of denying the disabled Residents equal access to housing of their choice in the community. *Harmony Haus I*, 440 F. Supp. 3d at 657, 659-61. In particular, Defendant refused to allow twelve unrelated individuals to reside at the Residence. *Id.*, at 659-61. After a January 2020 bench trial, this Court issued Findings of Fact and Conclusions of Law and a final judgment on February 18, 2020, determining that Defendant's actions in this regard were indeed discriminatory and enjoining Defendant from refusing to allow twelve unrelated individuals to reside at the Residence. *Id.*, at 667-9.

On March 3, 2020, exactly two weeks after this Court issued its final judgment in the above-referenced matter, Defendant voted to enact newly revised restrictive covenants, which were filed and recorded on March 5, 2020. March 3, 2020, Minutes of the Board of the Parkstone Property Owners Association, Inc. ("March 3, 2020 Minutes," attached as Exh. 2); Amendments to Rules of Parkstone Property Owners Association, Inc. ("Amended Rules,"

attached as Exh. 3); November 12, 2020 Deposition of Brian G. Pye ("Pye Depo.," attached as Exh. 4), 29:6-33:16.  Compare Revised and Restated Declaration of Covenants, Conditions and Restrictions Parkstone P.U.D. Phase I Travis County, Texas ("Initial Declaration," attached as Exh. 5), at 19 (making a vague reference to the power and authority of Defendant "to commence and maintain actions and suits to enforce, by mandatory injunction or otherwise, or to restrain and enjoin, any breach or threatened breach of this Declaration") with Amended Rules, at page 5 (imposing escalating fines structure).  For the first time, Defendant created a fine structure as an enforcement mechanism.  Pye Depo., 29:8-31:4, 51:3-5, November 12, 2020 Deposition of the Parkstone Property Owners Association, Inc. through Christopher K. Copeland ("Copeland Depo.," attached as Exh. 6),[1] 8:8-9:9; Amended Rules, at page 5.  Specifically, the fine structure escalated from $25 to $50 to $100 and in $25 increments thereafter.  Amended Rules, at page 5; January 6, 2021 Deposition of Wendy Chen ("Chen Depo.," attached as Exh. 7), 40:11-45:24.  With respect to one of its rules—the rule imposing a twelve-hour limit on street parking, the board expressly recognized that the clock restarts whenever someone leaves the neighborhood and comes back.  Copeland Depo., 17:2-19:3; Pye Depo., 62:14-65:9; March 3, 2020 Minutes.  The board members recognized that there would be no benefit to residents leaving and coming right back to park in the same place, although such an action would technically restart the clock and avoid violating the terms of the applicable restrictive covenant.  Pye Depo., 62:14-65:9; Copeland Depo., 34:22-36:13.  Harmony Haus management instructed the residents of the sober living residence to take precisely this action—to drive out of the neighborhood and back in

---

[1] Mr. Copeland was deposed as the corporate representative of Defendant under Fed. R. Civ. P. 30(b)(6).  Copeland Depo., 6:2-7.

3

again—if they were in danger of parking on the street for more than twelve hours.  October 27, 2020 Deposition of Dan Ragetté ("Rag. Depo.," attached as Exh. 8), 59:10-23.

Almost immediately, Defendant began sending violation notices to Plaintiffs, complaining of, among other things, violations of parking restrictions that prohibit parking in the street for more than twelve hours at a time.  *See, e.g.*, March 11, 2020 Violation Letter (attached as Exh. 9).  As of January 22, 2021, the date of Defendant's First Amended Disclosures, Defendant had imposed fines for alleged parking violations alone in amounts the totals of which "have reached the six figures."  Def. First Amended Disclosures (attached as Exh. 10), at page 6.

When Plaintiffs commenced litigation against Defendant on May 5, 2020, predicated in part on allegations of retaliation, Defendant asserted counterclaims against Plaintiffs based on Tex. Prop. Code § 202.004(c) and a breach of contract theory.  During the discovery period, Defendant has consistently limited the calculation of its claimed damages to a summation of the fines it has imposed.  *See, e.g.*, Defendant's First Amended Disclosures, at pages 6-7; Copeland Depo., 39:4-41:1 (reviewing Defendant's initial disclosures and confirming that the fines referenced there represented an accurate calculation of Defendant's claimed damages); Defendant's Initial Disclosures (attached as Exh. 11).  Even in its verified Responses to Plaintiffs' Interrogatories (attached as Exh. 12), dated November 12, 2020, and never supplemented during the remainder of the discovery period, Defendant calculates its damages exclusively in terms of fines and associated statutory damages under the Texas Property Code.  It makes no reference to any specific actual damages suffered and offers no calculation of such damages.  Plaintiffs bring this Motion to demonstrate that, with no evidence of any actual damages, Defendant has no viable mechanism for recovering the damages it has calculated.  This Court should thus grant partial summary judgment with respect to this issue.

## II.     ARGUMENT

Defendant has alleged repeated violations of its restrictive covenants by the residents of the Harmony Haus sober living residence situated in the Parkstone neighborhood.  Specifically, Defendant has alleged that the residents have frequently violated Parkstone's rule against parking on the streets for more than twelve hours at a time.  However, Defendant has produced no evidence of any kind that it has incurred any actual damages from such alleged violations.  In fact, Defendant and its board members have admitted that it would provide no relative benefit— and thus no less in the way of actual damage—if the residents complied with the restrictive covenant by leaving the neighborhood and coming directly back and parking again.  Unable to show any actual damages, Defendant has calculated its alleged damages entirely in terms of the fines it has imposed.  However, Texas law does not permit Defendant to use the intervention of this Court as a mechanism to collect punitive fines through the causes of action it has asserted without a showing of actual damages.  Defendant's claims lack viability as a matter of law, and this Court should thus grant partial summary judgment for Plaintiffs.

**A.     Summary Judgment Standard**

"Summary judgment is warranted when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The movant must point out the absence of evidence supporting the nonmoving party's case.  If that burden is met, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  *Wright v. UPS*, No. 20-30249, 2021 U.S. App. LEXIS 1780, *2 (5th Cir. Jan. 22, 2021) (citations and internal quotation marks omitted).

**B.     Statutory Damages under Tex. Prop. Code § 202.004(c)**

Defendant's claim for statutory damages under Tex. Prop. Code § 202.004(c) must fail because Defendant has presented no evidence of actual damages.  Without a showing of actual

5

damages, a homeowners' association may not obtain statutory damages under § 202.004(c) as such statutory damages are exemplary in nature and thus controlled by Chapter 41 of the Texas Civil Practice and Remedies Code. *See KBG Invs., LLC v. Greenspoint Prop. Owners' Ass'n*, 478 S.W.3d 111, 123 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (holding that Tex. Civ. Prac. & Rem. Code Ch. 41 applies to Tex. Prop. Code § 202.004(c) and concluding that "statutory 'civil damages' under section 202.004(c) of the Texas Property Code are exemplary damages, and as such, are unavailable where the claimant sustains no other damages.")

Texas law on this issue in large part mirrors federal constitutional law. The United States Supreme Court has admonished that "[o]ur jurisprudence and the principles it has now established demonstrate . . . that, in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003). *See also, e.g.*, *BMW of N. Am. v. Gore*, 517 U.S. 559, 580 (1996) ("The principle that exemplary damages must bear a 'reasonable relationship' to compensatory damages has a long pedigree.") Where there are no compensatory damages at issue, a single-digit ratio (or, indeed, any calculable ratio) would call for zero punitive damages.

Parkstone Board members uniformly confirmed that the fines were punitive in nature and were not connected to any actual damages suffered. Pye Depo., 35:16-36:19; Copeland Depo., 13:15-14:14; Chen Depo., 40:11-45:24. In fact, one of the board members, Brian Pye, admitted that, in the absence of a cap placed on fines as of September or October of 2020, the fine amounts per violation could have gone up an infinite amount, untethered to any actual damages figure of any kind. Pye Depo., 42:4-43:3. Such a potentially infinite level of exposure to punitive damages in the absence of any showing of actual damages violates due process and

violates Texas law. Likewise, the imposition of "six figures" in fines against Plaintiffs here in the absence of any showing of actual damages would violate applicable law as well.

Moreover, Defendant cannot show any actual damages. As explained above, to avoid violating the twelve-hour parking rule, residents of the Residence need only drive out of the neighborhood and drive right back in again and park in the same place. Copeland Depo., 17:2-19:3; Pye Depo., 62:14-65:9; March 3, 2020 Minutes. The Parkstone Board members admitted that there would be no benefit from residents taking that course of action and that thus there would be no actual damage from their declining to do so. Pye Depo., 62:14-65:9; Copeland Depo., 34:22-36:13. In fact, it is clear that having residents drive out of the neighborhood and right back in again would actually cause more damage through vehicular traffic in the neighborhood and the like. Harmony Haus management instructed residents of the sober living residence to take precisely this action to avoid parking fines. Rag. Depo., 59:10-23. Thus, Defendant could not even in principle demonstrate actual damages on the basis of the alleged parking violations. To the extent that any residents failed to heed the instructions of Harmony Haus management to take the measure—recognized by Defendant as legitimate—of leaving the neighborhood and returning to park in the street once again, they did not damage Defendant through this failure. Defendant may not use this Court as a mechanism to collect exemplary damages for such alleged violations.

## C.  Breach of Contract Damages

Defendant's claim for damages under a breach of contract theory fails for similar reasons. As an initial matter, the parties never entered into a contract that included the escalating fine amounts Defendant seeks to collect through their breach of contract claim. As explained in Section I above, the restrictive covenants in place at the time that Harmony Haus took up

occupancy at the Residence had no such fine structure. Initial Declaration, at 19. It merely made vague reference to the fact that Defendant could, in principle, take various unspecified enforcement measures. *Id.* Only in March of 2020, after this Court's February 18, 2020 decision in favor of Plaintiffs, did Defendant amend the restrictive covenants to include an escalating fine structure. Amended Rules, at 5. At that point, Defendant began imposing such fines immediately. The parties never had any meeting of the minds with respect to the imposition of escalating fines and thus never had a contractual agreement on this point. *See, e.g.*, *R.R. Comm'n of Tex. v. Gulf Energy Exploration Corp.*, 482 S.W.3d 559, 575 (Tex. 2016) ("A meeting of the minds is necessary to form a binding contract.")

Furthermore, as explained in Section II.B above, the damages sought by Defendant through its breach of contract claims are entirely punitive in nature. Such damages are not available through a breach of contract cause of action. Rather, damages for breach of contract are limited to just compensation and cannot constitute a penalty. *See, e.g.*, *Atrium Med. Ctr., LP v. Houston Red C LLC*, 595 S.W.3d 188, 192 (Tex. 2020) (explaining the "universal rule that damages for breach of contract are limited to just compensation for the loss or damage actually sustained" and noting that a "damages provision that violates the rule of just compensation . . . and functions as a penalty[] is unenforceable.") (citations and internal quotation marks omitted); *Safeshred, Inc. v. Martinez*, 365 S.W.3d 655, 659 (Tex. 2012) ("While exemplary or punitive damages may generally be awarded for torts involving malicious or grossly negligent conduct, they are not available for breach of contract claims."); *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 664 (Tex. 1998) (explaining that even an intentional breach of contract does not warrant recovery for exemplary damages).

While Texas law does allow the recovery of liquidated damages in actions for breach of contract, such damages must serve as a reasonable estimate of actual damages and cannot serve a punitive function. As the Texas Supreme Court has explained, "[t]he common law and the Uniform Commercial Code have long recognized a distinction between liquidated damages and penalties. If damages for the prospective breach of a contract are difficult to measure and the stipulated damages are a reasonable estimate of actual damages, then such a provision is valid and enforceable as 'liquidated damages;' otherwise, it is void as a 'penalty.'" *Flores v. Millennium Interests, Ltd.*, 185 S.W.3d 427, 431 (Tex. 2005). Consequently, a contractual agreement that stipulates a liquidated damages amount as an estimate of an actual damages amount difficult to ascertain with precision can be valid. A contractual agreement that specifies merely punitive damages amounts with no connection to actual damages cannot be valid. *See, e.g.*, *Eberts v. Businesspeople Personnel Services, Inc.*, 620 S.W.2d 861, 864 (Tex. Civ. App.—Dallas 1981, no writ) (holding a stipulation for liquidated damages unenforceable as a penalty where the amount at issue could not "be considered a genuine pre-estimate of the harm to be suffered by any single breach.")

The fines Defendant has imposed do not constitute any reasonable estimate of actual damages and thus cannot be recovered as liquidated damages. On the contrary, they have no connection to actual damages at all. As explained above, the members of the Parkstone Board uniformly testified that the Board determined the escalating fine structure as a mechanism to provide incentive for compliance—a punitive motivation having no relationship to compensation for actual damages. By their own admission, the fines imposed by Defendant are penalties and may not be recovered as breach of contract damages. Thus, Defendant has not asserted a proper

legal basis for obtaining the amounts of the fines it has imposed as breach of contract damages through the intervention of this Court.

### III. CONCLUSION

In light of the foregoing, Plaintiffs respectfully request that this Court grant them partial summary judgment with respect to Defendant's counterclaims based on Tex. Prop. Code § 202.004(c) and breach of contract and determine that Defendant seeks to recover damages through those claims that are unavailable as a matter of law.

DATED: January 29, 2021

Respectfully submitted,

\_\_\_/s/ Mark Whitburn_____

**Attorneys for Plaintiffs**

Mark Whitburn
Texas Bar No. 24042144
Sean Pevsner
Texas Bar No. 24079031
Whitburn & Pevsner, PLLC
2000 E. Lamar Blvd., Suite 600
Arlington, Texas 76006
Tel: (817) 653-4547
Fax: (817) 653-4477
Mwhitburn@whitburnpevsner.com

### CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of January, 2021, a true and correct copy of the foregoing document was served via electronic mail on counsel of record for Defendant as follows:

Eric Hansum
Niemann & Heyer, LLP
Westgate Building, Suite 313
1122 Colorado Street
Austin, Texas 78701

\_\_\_/s/ Mark Whitburn_____
Mark Whitburn