IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| HARMONY HAUS WESTLAKE, L.L.C., et al., | § § § | |
| Plaintiffs and Counter-Defendants, | § § | |
| v. | § § | CIVIL NO. 1-20-CV-486-XR |
| PARKSTONE PROPERTY OWNERS ASSOCIATION, INC., | § § § | |
| Defendant and Counter-Plaintiff. | § § | |

**Parkstone's Response to Plaintiffs' Motion for Partial Summary Judgment**

Parkstone Property Association, Inc. ("**Parkstone**") files this Response to Plaintiffs' Motion for Partial Summary Judgment and shows:

**I.**

**FACTS**

Harmony Haus residents have violated the parking rules over 1,000 times since trial.[1] They are the most egregious violators of Parkstone's rules in the past seven years, and probably in the entire history of Parkstone. Before Harmony Haus's arrival, the actual or threatened fine was $50 per violation, which issue was previously litigated and which sets a floor for Parkstone's damages.[2]

---

[1] The numerous parking violations from Harmony Haus residents are attached to Parkstone's Motion for Partial Summary Judgment at ECF 42-2 (Exhibit 2-A, Pye Declaration and see his Declaration at Exhibit 2 for evidence used in this Response), Parkstone's violation history can be found at ECF 42-1 (Exhibit 1-A, English Declaration), and certain deposition excerpts already cited for this Court from ECF 42-3, 42-4, and 42-7. Parkstone incorporates these documents by reference herein and asks this Court to take judicial notice of such filings to avoid multiple, repetitive exhibit filings.

[2] Parkstone's Motion for Partial Summary Judgment at ECF 42-1 (Exhibit 1-A, English Declaration, spreadsheet, 2014 entry, $50 fine for an architectural issue); *see also*

After Harmony Haus's arrival, traditional enforcement methods were not working and a proportionate *escalating* fine structure was adopted.[3] If there is any alleged excessiveness in what Mr. Zhou and Ms. Du owe under this scheme, it comes from Harmony Haus residents freely violating the parking restrictions and not from inherent problems with the fining scheme itself.

The enforceability of Parkstone's fining scheme should not turn on extravagantly bad conduct by Harmony Haus, as if the worse one's behavior, the less it should be corrected. Harmony Haus has all but admitted that there are no consequences for the residents if they do not follow the parking rules, with the owner of Harmony Haus stating he is not going to enforce Harmony Haus's own policies.[4] Plaintiffs' Motion is just an attempt to relitigate this Court's pronouncement from the first lawsuit – that Harmony Haus residents must follow the parking rules.

The fines are also permissible and properly viewed as liquidated damages as shown below and are separate and apart from the other actual damages Parkstone will present at trial. Plaintiffs conflate the lack of mathematical numbers identified in the discovery responses with the argument that there is no evidence of damages. Parkstone has actual damages. It disclosed at least sixteen homeowner witnesses in the disclosures on this topic and produced numerous homeowner complaints about Plaintiffs turning the area in front of the sober living residence into a parking lot and how that impacts the Parkstone community on safety and aesthetic issues. (Plaintiffs' Motion at ECF 43, Exhibit 10,

---

*Findings of Fact and Conclusions of Law*, 1:19-cv-01034-XR, ECF No. 29 at p. 3, § II.4 "Def. Ex. 17 (letter showing potential fine of $50 for parking violation).").

[3] Parkstone's Motion for Partial Summary Judgment at ECF 42-3 (Ex. 3, Copeland at p. 13, l. 15 -20) and ECF 42-4 (Ex. 4, Pye at p. 31, l. 15 – 25).

[4] Parkstone's Motion for Partial Summary Judgment at ECF 42-7 (Ex. 7, Ragette at p. 67, l. 11-20).

Parkstone's Amended Disclosures, identifying sixteen homeowners to testify and have knowledge about "parking problems in Parkstone" and "Defendant's counter-claims"; Exhibit 1-A, multiple homeowner complaints).

Nor is there any prejudice or harm here to Plaintiffs' quarrel with the alleged lack of discovery detail. *See* FED. R. CIV. P. 37(C) (evidence does not need to be excluded when the issue is harmless or substantially justified). Parkstone' specifically pleaded the damages at issue:

> Parkstone and its residents will suffer damages including, without limitation on, increased safety issues, higher traffic congestion on the street especially since the garage is not being used, a diminution of value of the neighborhood's property rights, and loss of the aesthetic and residential character of the neighborhood. Damages also include the fines that are owed under Parkstone's dedicatory instruments.

(Parkstone's First Amended Answer to Counterclaims, Case 1:20-cv-486-XR, ECF 35 at ¶¶ 21-22). The Board is tasked with ensuring rules are followed and enforcing the duties of the Association to help ensure the community is protected on these matters. (Plaintiff's Motion at ECF 43-5, Exhibit 5, Parkstone's Declaration at § 4.4(h) and preamble).

Both the disclosures and interrogatory answers direct Plaintiffs to see the pleadings for additional damages details. (Plaintiff's Motion at ECF 43-5, Exhibits 10 and 12, Parkstone's disclosures and interrogatory answers). And the pleadings spell out the actual damages. Plaintiffs did not complain that the detail was insufficient until *after* the discovery period ended and the pending Motion was filed.

Alternatively, and if necessary, Parkstone moves for leave of court to supplement the damages summaries with similar information already provided during discovery and elaborated upon in this Response.

At trial, this Court should evaluate the evidence on Parkstone's counterclaims, and thereafter award to Parkstone, amongst other things, actual or other damages, liquidated damages concerning fines, nominal damages, and attorneys' fees.

## II.

### ARGUMENT:

Collateral estoppel and waiver establishes a damages floor, Parkstone proved actual damages and any lack of detail was harmless, the fines are liquidated damages, Plaintiffs waived the penalty argument on the contract counter-claim, and Parkstone has other damages not addressed.

**A.     Collateral estoppel and waiver bars Plaintiffs' challenges to a fine assessment of at least $50 per violation and establishes damages.**

The elements of collateral estoppel are, (1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) the determination of the issue in the prior action must have been a part of the judgment in that earlier action. *In re Southmark Corp.,* 163 F.3d 925, 932 (5th Cir. 1999). Plaintiffs have already challenged whether Parkstone's parking rules would apply with an opportunity to challenge Parkstone's prior methods of enforcement. After trial, the Court ruled in support of its Final Judgment:

> The remaining provisions, including the noise and nuisance provision (Section 2.8) and parking provision (Section 2.11) remain in effect, and Defendant may enforce those if there are violations, though any such enforcement must be applied in an evenhanded manner that treats handicapped and non-handicapped residents alike.

(*Findings of Fact and Conclusions of Law*, 1:19-cv-01034-XR, ECF No. 29 at p. 12, Conclusions). Moreover, "[a]ny violation of the Declaration may be enforced by the Parkstone board . . . **Parkstone has, at times, issued violation notices. Def. Ex. 17 (*showing potential fine of $50 for parking violation*).**" *Id.* at p. 3, § II.4

**(emphasis added).** A courtesy copy of Defendant's exhibit 17 from the first trial is attached as Exhibit 1-B. The above collateral estoppel elements are met. To wit, i) the parking rules apply to Plaintiffs ii) Parkstone can enforce such rules even-handedly, and iii) Parkstone's prior methods of enforcement consisted of $50 per violation when not corrected. Thus, the $50 fine per violation, even without an escalating fine structure being enacted, sets a floor on Parkstone's damages in this lawsuit.

Any attacks lodged on the ability to fine at $50 per violation in Plaintiffs' Motion, outside of determining the number of violations that occurred *after* trial, needed to be raised in the last lawsuit when Plaintiffs were holistically attacking the parking restrictions. These attacks have independently been *waived* with respect to the $50 per violation floor. Consequently, Plaintiffs' summary judgment on damages for Parkstone's counter claims should be denied because any attack on actual damages of $50 times the number of violations is barred by collateral estoppel and waiver and those damages are substantial.

**B.    Parkstone pled and provided evidence on actual damages during discovery and any complained of lack of detail in the discovery responses were harmless or substantially justified.**

For the first time in this case, Plaintiffs attack the level of detail in Parkstone's disclosure and interrogatory responses. In evaluating harmless error, the Court considers, "(1) the explanation for the failure to disclose; (2) the importance of the information; (3) potential prejudice to the opposing party of including the evidence; and (4) the availability of a continuance to cure such prejudice." *CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 280 (5th Cir. 2009); *see* FED. R. CIV. P. 37(c) (a party is not allowed to use certain information not provided in disclosures "unless the failure was substantially justified or is harmless"). These factors support a finding of harmless error.

With respect to the first element, the damages were disclosed in other documents and pleadings. Parkstone's pleadings assert it is seeking actual and other direct damages. Parkstone also sought in its prayer, actual, nominal, and consequential damages. (Parkstone's First Amended Answer to Counterclaims, Case 1:20-cv-486-XR, ECRF 35 at ¶ 26). The sixteen different homeowners listed as potential witnesses on problems with the parking situation, coupled with supporting documentation produced in discovery showing problems from Harmony Haus using the area as a parking lot, and the description of actual damages described in the pleadings are enough to establish actual damages to overcome the summary judgment. (Exhibit 1-A, homeowner complaints). That evidence shows the increased safety issues, higher traffic congestion on the street especially since the garage is not being used, a diminution of value of the neighborhood's property rights, and loss of the aesthetic and residential character of the neighborhood. These are the very issues identified in Parkstone's pleadings. Moreover, the Board has spent countless hours having to track parking violations and in large part because Plaintiffs fail to acknowledge and stipulate to the number of violations that are occurring despite the obviousness of what is happening. (Exhibit 1, Pye Declaration).

Plaintiffs attacks are also based on the implicit notion that there was not an itemization here of damages in the disclosure responses. "[M]athematical precision is not required-to establish the extent or amount of one's damages, one must bring forward the best evidence of the damage of which the situation admits. . . ." *MBM Fin. Corp. v. Woodlands Oper. Co*., 292 S.W.3d 660, 666 (Tex. 2009). At trial, this Court will need to decide the value of actual damages from the parking violations after evaluating the credibility of the witnesses and weighing of the evidence. Such damages are not zero.

With respect to the other elements, there is no prejudice here given Plaintiffs had the same information from other documents, Plaintiffs never complained of such prejudice, and the alleged missing detail is easy to supply. If this Court deems the responses deficient, Parkstone moves for leave of court to give Parkstone ten (10) days to supplement the disclosures and interrogatories on damages. *See Burrell v. Crown Central Petroleum, Inc.*, 177 F.R.D. 376, 385 (E.D. Tex. 1997) (suggesting the usual approach that *parties confer and supplement disclosures if more information is needed* and if that does not work *then* court intervention would be appropriate). This should not substantially delay any trial proceedings and it is likely the trial may be continued one more time as the parties are waiting for a decision from the Fifth Circuit.

**C.    Parkstone's breach of contract counter-claim separately survives summary judgment for additional reasons.**

**1.    The fines are recoverable as contractual liquidated damages.**

The fines are liquidated damages because they set out the amount of damages for a breach in advance. "[T]o be enforceable, the fee charged must be a reasonable estimate of damages, and those damages must be incapable of precise calculation." *BMG Direct Mktg. v. Peake*, 178 S.W.3d 763, 766 (Tex. 2005); *see also* Exhibit 1, Pye Declaration. An excellent decision evaluating fine structures in the context of homeowner associations is *Brown v. Spring Valley Homeowners Assoc., Inc.*, No. 2016–UP–343, 2016 WL 3595791 at *1 (S.C. Ct. App. June 29, 2016) (copy provided in Exhibit 2).

In *Spring Valley*, the Court discusses how fines are permissible as long as it follows basic non-profit business law and is not inconsistent with its governing documents. The meeting of the minds arguments are completely off the mark (Plaintiffs' Motion at p. 8) as the fine process is part of the enforcement of the restrictive covenants that run with the

land and the homeowners agreed to follow the rules along with granting broad powers of the Parkstone Board to enforce the deed restrictions as a condition to live in and use the residence located within the confines of Parkstone.[5] (*See Plaintiffs' Motion*, Exhibit 5 at pp. 1, 4, 18, property is subject to the restrictions in the Declaration and Section 4.4(c) gives the Board broad powers to change the By-laws; the fines enforce the parking restrictions and is consistent);[6] *Spring Valley Spring Valley*, 2016 WL at *3 (restrictive covenants require the homeowner to become a member of the association and can *indirectly authorize the imposition of fines*); Exhibit 1-B, By-laws amendment on Board enforcement powers).

As confirmed by *Spring Valley,* when discussing whether the fines are viewed are a penalty versus a liquidated damages clause, it is helpful to examine the intention of the parties as well as the actual fine structure itself. *Spring Valley*, 2016 WL at *4. In *Spring Valley*, there was a $100 weekly escalating fine structure with a cap of $1,500 per violation per year, which the Court permitted as liquidated damages despite fines being synonymous with the word "penalty." *Spring Valley*, 2016 WL at *4-5

Parkstone's escalating fine structure and situation is similar in many respects. As already proven, Parkstone is a non-profit Texas corporation. (*Findings of Fact and Conclusions of Law*, 1:19-cv-01034-XR, ECF No. 29 at p. 1). Under Texas's non-profit act, the Board for Parkstone has broad discretion to amend and change the by-laws as long as

---

[5] While Harmony Haus residents are creating the violations, and the property is burdened with the parking restrictions, the recovery for the violations comes against the "members" of the Association, in this case, Zhou and Du as the homeowners. Consequently, any agreements or meeting of the minds with Harmony Haus are irrelevant.
[6] *See also* section 4.1 of the By-laws gives the Board the powers to exercise broad powers to manage and control the property like a corporation at *Def. Ex. 2*, 1:19-cv-01034-XR, ECF No. 22-2.

not inconsistent with the certificate of formation and applicable law.   TEX. BUS. ORGS. CODE § 22.102(C). Parkstone's Declaration in Section 4.4(c) gives the Board the power to change the By-laws not in conflict with the Declaration and the By-laws would permit the power to fine. (*Plaintiffs' Motion*, Exhibit 5; Exhibit 2, By-laws amendment and *see* footnote six above). The fines are also consistent with Parkstone's Declaration, to help enforce the parking rules.

The fine structure itself is a reasonable estimate of damages and it is tied to damages that are not capable of precise calculation. (Ex. 1, Pye Declaration). For instance, there is a distinction between curable and incurable violations. Because incurable violations are more severe, for things that can "pose a threat to public health or safety" such as shooting fireworks, the fine structure starts with a $100 fine and escalates to $150 and then in $25 dollar increments. (Plaintiffs' Motion, Exhibit 3, at pp. 4-5 of the amended rules). For curable violations, such as maintenance issues or parking type issues, there is an optional courtesy letter, a $25 fine, then a $50 fine, then a $100 fine, and so forth in $25 dollar increments. *Id.* Because these violations are comparatively less severe (but still should not occur), the dollar amounts of the fines are less.

Moreover, when it was realized that the Plaintiffs were committing an astronomical number of violations, the Board passed a $300 cap per violation to minimize the amount of fines assessed, which creates proportionality with actual damages. (Plaintiffs' Motion, Exhibit 2, September 2020 meeting minutes; *Findings of Fact and Conclusions of Law*, 1:19-cv-01034-XR, ECF No. 42-1, Exhibit 1-B to Parkstone's Motion for Partial Summary Judgment). As noted from the meeting minutes:

> The board hereby determines that fines will be capped at $300/violation with, as stated in the rules, each instance of/day of the violation being a separate violation) and will not be incrementally increased past $300 for

ongoing violations without further vote of the board.  This cap shall apply
to all violations . . . .

*Id.*  As indicated, if the total fines are high it is because it is completely unprecedented to have over 1,000 violations to address in less than a year, not because the fine structure itself is flawed. As shown in Parkstone's Motion for Partial Summary Judgment, most homeowners do not have that many violations and comply after being warned so the fine numbers should never be excessive.

Moreover, the Court in *Spring Valley* held that fines of "$1,500 per year, per violation" represented a "reasonable, if not modest" estimate of damages and are permissible "primarily due to the attorney' fees *but also any possible diminution in value of the subdivision's homes*." *Spring Valley*, 2016 WL at *5 (emphasis added). In short, an evaluation of attorneys' fees can be a factor for determining the proportionality of the fines and should be here when Parkstone has had to deal with two separate TRO hearings in this matter, a Motion to Dismiss (most of which was successful), and thousands of photographs because Plaintiffs will not stipulate the 12 hours parking violations are occurring and have challenged Parkstone's ability to use such evidence despite it being the best evidence of the violations. Moreover, diminution in homeowner value is also a factor to consider on proportionality as the violations occur almost daily with great frequency, are ongoing, and numerous homeowners have complained in writing about the parking problems and potential loss of value with twelve adults regularly violating the restrictions. (Exhibit 1-A, homeowner complaints). These are not isolated or limited situations.

Overall, these damages calculations are best addressed after a trial.

**2.  Plaintiffs waived the defense that the fines are an illegal penalty.**

Plaintiffs assert the fines are not liquidated damages because they are an unenforceable penalty. (Motion at pp. 8-9). However, arguing the fines are penalties is an affirmative defense against a breach of contract claim that must be pled or it is waived. *Phillips v. Phillips*, 820 S.W.2d 785, 789 (Tex. 1992) (the "penalty" argument is an avoidance or affirmative defense that should be asserted or it is waived); *Urban TV Network Corp. v. Liquidity Solutions, L.P.*, 277 S.W.3d 917, 919 (Tex. App.—Dallas 2009, no pet.) (Plaintiffs burden to "plead" and prove it is a penalty). Plaintiffs do not attack the fines on "penalty" grounds on the breach of contract claim. Instead, they pled:

> Plaintiffs further assert that the fines imposed by Defendant exceed the *statutory* limits imposed under applicable *statutory* provisions, that Defendant has failed to provide the notice required by the applicable statutory provisions, that Defendant's actions in this regard constitute a breach of fiduciary duty, and that the fines imposed exceed constitutional limits.

(Plaintiffs' First Amended Answer to Counterclaim, Case 1:20-cv-486-XR, ECRF 29 at ¶ 29) (emphasis added).  Parkstone's breach of contract claim is not a "statutory" claim and the other defenses do not indicate Plaintiffs are arguing the fines are *penalties* and not *liquidated damages* on the breach of contract claim. Consequently, the breach of contract claim survives Plaintiffs' Motion on this ground alone.

**D.  Parkstone also has nominal and attorneys' fees damages and a global dismissal on damages is unwarranted.**

Harmony Haus's proposed order[7] asks this Court to dismiss the counterclaims for "damages" but the proposed order is overly broad because Parkstone has damages claims

---

[7] The Motion does not explicitly say there are no attorneys' fees damages but Plaintiffs instead provided a broad proposed order on "damages."  And the Motion did not seek a ruling on Parkstone's request for nominal damages and attorneys' fees.

that Plaintiffs have not addressed. Parkstone pled nominal damages and seeks attorneys' fees on its breach of contract claim. (Parkstone's First Amended Answer to Counterclaims, ECF 35 at p. 21). Nominal damages are permissible without proof of actual damages. *See MBM Fin. Corp. v. Woodlands Oper. Co.*, 292 S.W.3d 660, 664-65 (Tex. 2009) (nominal damages can be recovered for breach of contract).

In the homeowner association context, an award of attorneys' fees has been made easier by the Texas legislature, presumably in recognition that damages from deed restriction violations can be difficult to quantify precisely and should not be a barrier to the recovery of such fees. For instance, Parkstone can recover for "collecting amounts, including damages, due the association for enforcing restrictions or the bylaws or rules of the association." TEX. PROP. CODE 209.008; *see also Intercontinental Group Partnership*, 295 S.W.3d at 653 (parties can even contract for a more lenient standard to receive attorneys' fees). Consequently, the collection of *any fines* can trigger an attorneys' fees award under Chapter 209.008 of the *Texas Property Code*. The language used is broader than the "prevailing party" standard in other situations. The standard simply is if someone collects any amounts owed "due the association."

Separately, Section 5.006 of the *Texas Property Code*, creates another lenient standard for associations to receive fees and costs, this time, as a prevailing party "in an action based on breach of a restrictive covenant." TEX. PROP. CODE 5.006; *see Garden Oaks Maint. Org. v. Chang,* 542 S.W.3d 120, 140 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (a party successfully *defending* such a claim *cannot* recover such fees). Attorneys' fees can also be awarded to a "prevailing party" with a nominal damages finding of $1. *See Intercontinental Group Partnership v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 654

12

(Tex. 2009), *citing Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992) (a party "prevails" with a nominal fee award although it may reduce the amount of attorneys' fees).

These damages claims survive for trial separate and apart from the argumentation in Plaintiffs' Motion and the proposed Order is overly broad.

## CONCLUSION AND PRAYER

For the reasons set out above Plaintiffs' Motion for Partial Summary Judgment should be denied. If this Court deems the damages responses as insufficient, Parkstone requests leave of court to add more details to the disclosures and interrogatory responses on damages and Parkstone seeks such other relief to which it may be entitled.

Respectfully submitted,

NIEMANN & HEYER, LLP
Westgate Building, Suite 313
1122 Colorado Street
Austin, Texas 78701
Telephone: (512) 474-6901
Fax: (512) 474-0717

/s/ Eric J. Hansum
Eric J. Hansum, Of Counsel
Texas State Bar No.: 24027225
erichansum@niemannlaw.com

**ATTORNEYS FOR THE**
**PARKSTONE PROPERTY**
**OWNERS ASSOCIATION, INC.**

## CERTIFICATE OF SERVICE

I certify that on February 12, 2021, I electronically filed the foregoing with the clerk of the court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Eric J. Hansum*
Eric J. Hansum