Exhibit 2 –
*Brown v. Spring Valley Homeowners Assoc., Inc.,*

Case 1:20-cv-00486-XR   Document 45-2   Filed 02/12/21   Page 2 of 8

Brown v. Spring Valley Homeowners Association, Inc., Not Reported in S.E. Rptr. (2016)

2016 WL 3595791
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**
Court of Appeals of South Carolina.

S. Coley BROWN, Appellant,

v.

SPRING VALLEY HOMEOWNERS ASSOCIATION, INC., Respondent.

Appellate Case No. 2014–002587
|
Unpublished Opinion No. 2016–UP–343
|
Heard April 19, 2016
|
Filed June 29, 2016

Appeal From Richland County, Eugene C. Griffith, Jr., Circuit Court Judge

**Attorneys and Law Firms**

Andrew Sims Radeker, of Harrison & Radeker, P.A., of Columbia, for Appellant.

Charles A. Krawczyk, of Finkel Law Firm LLC, and Ely Owen Grote, of Brown & Brehmer, both of Columbia, for Respondent.

**Opinion**

PER CURIAM:

*1 In this declaratory judgment action, Appellant S. Coley Brown (Homeowner) seeks review of the circuit court's order granting summary judgment to Respondent Spring Valley Homeowners Association, Inc. (the Association) on Homeowner's claims and the Association's counterclaim. Homeowner argues (1) the circuit court should have declared the Association did not have the authority to impose a $500 fine against him for violating a restrictive covenant prohibiting "For Sale" signs; (2) this restrictive covenant is void as a restraint on alienation of property; (3) the circuit court erred in granting summary judgment to the Association on the slander of title claim because the Association did not have the authority to record a lien against his property for unpaid fines; and (4) the Association was involved in trade or commerce for purposes of the South Carolina Unfair Trade Practices Act (UTPA). We affirm.

**I. Authority to Impose Fines**

Homeowner contends the circuit court erred in concluding the Association could lawfully impose fines on its members. He argues (1) only a government can impose fines; (2) the restrictive covenants do not authorize the imposition of fines;[1] (3) the bylaws' provisions concerning fines are not the equivalent of a liquidated damages provision in a contract but rather constitute unenforceable contractual penalties; and (4) the Association's imposition of fines violates public policy. We disagree.

Brown v. Spring Valley Homeowners Association, Inc., Not Reported in S.E. Rptr. (2016)

Case 1:20-cv-00486-XR   Document 45-2   Filed 02/12/21   Page 3 of 8

Homeowner first argues there is no statute authorizing the Association to impose fines on its members and "[a]t common law, the power to fine is vested solely in the sovereign." We disagree. The Association was incorporated as a nonprofit corporation on May 6, 1976, and it has been subject to the South Carolina Nonprofit Corporation Act, S.C. Code Ann. §§ 33–31–101 to –1708 (2006 & Supp. 2015), since its enactment in 1994. *See* Act No. 384, 1994 S.C. Acts 4126. Section 33–31–206 requires nonprofit corporations to adopt bylaws and provides that the bylaws "may contain any provision for regulating and managing the affairs of the corporation that is not inconsistent with law or the articles of incorporation." Currently, there are no South Carolina statutes or appellate opinions prohibiting nonprofit corporations from fining their members.[2] Further, the imposition of fines does not conflict with the Association's governing documents.

**\*2** Homeowner cites opinions from other jurisdictions to support the proposition that absent statutory authority, HOAs may not levy fines against their members. However, the cited opinions either do not support such a proposition or concern HOAs for condominium communities or "planned communities," which are regulated by state statutes. Likewise, the statutes from other jurisdictions cited by Homeowner govern condominiums. Unlike a house in a subdivision, a condominium is created and regulated by statute as a hybrid form of shared and individual ownership of apartments.[3] Therefore, the cited authorities are not persuasive.

Rather, secondary sources concerning associations in general are instructive on this question.

> An association may provide penalties by way of fines for the derelictions of its members. Such penalties must, however, be determined according to some method to which the member has agreed, at least impliedly, by joining the association, not only as to the imposition of the fine but also as to the maximum amount thereof.

6 Am. Jur. 2d *Associations and Clubs* § 31 (2008). In other words, "[t]he liability of a member of an association for ... fines and penalties[ ] depends on his or her contract with the association as embodied in its articles of association or constitution and bylaws." 7 C.J.S. *Associations* § 62 (2015) (footnote omitted).

"The relationship of a voluntary association with its members is governed by contract law[,] and it makes no difference whether the articles of association are called a constitution, charter, bylaws, or any other name." 7 C.J.S. *Associations* § 14 (2015) (footnote omitted). "The constitution, bylaws, and regulations of an association create a legally enforceable agreement in the nature of a contract between the organization and the member because of corresponding mutual obligations by the member to follow the rules of the organization and by the organization to fairly apply those rules." *Id.* (footnotes omitted). "Any dispute between a voluntary association and one of its members concerning the validity of an association's constitution, bylaws, rules and regulations constitutes a dispute as to the validity of a written contract." *Id.* (footnote omitted).

Further, those jurisdictions considering the authority of associations to impose fines have confirmed the existence of this authority. *See Multiple Listing Serv. of Jackson, Inc. v. Century 21 Cantrell Real Estate, Inc.*, 390 So. 2d 982, 986 (Miss. 1980) ("[I]t is highly desirable that private organizations ... have the right to discipline members for violations of standards of professional conduct as set out by the constitution, bylaws, rules and regulations of the respective organizations. However, ... before a fine can be imposed[,] a private association must have a schedule of maximum fines that may be imposed[,] to which schedule each member has agreed to be bound by joining the association."); *Jackson v. S. Omaha Live–Stock Exch.*, 68 N.W. 1051, 1053 (Neb. 1896) (holding the rights and liabilities of the members of a livestock exchange were dependent on their contract and upholding the exchange's imposition of a fine against one of its members); *see also Louisiana High Sch. Athletic Ass'n v. St. Augustine High Sch.*, 396 F.2d 224, 227 (5th Cir. 1968) (dictum) (noting a high school athletic association had "the power to investigate, discipline and punish member schools by fine and otherwise"); *Multiple Listing Serv. of Jackson, Inc.*, 390 So. 2d at 986 (dictum) (stating a "fixed, reasonable fine, in the nature of liquidated damages" for damages sustained by a professional association due to "unprofessional or unethical conduct would be sustained").

**\*3** Here, Homeowner's deed to his property was made subject to any recorded restrictions, such as the Association's restrictive covenants appearing in the 1979 deed conveying the property to Homeowner's predecessor in title. The 1979 deed states, in pertinent part, "This conveyance is made subject to the following conditions, covenants and restrictions: (1) By acceptance of

**Brown v. Spring Valley Homeowners Association, Inc.**, Not Reported in S.E. Rptr. (2016)

Case 1:20-cv-00486-XR   Document 45-2   Filed 02/12/21   Page 4 of 8

this deed, the GRANTEE covenants and agrees that GRANTEE will become a member of [the Association] and will abide by its duly enacted rules, regulations and by-laws ...." Therefore, Homeowner entered into a contractual relationship with the Association when he executed and accepted the deed to his property in 2007. By accepting his deed, Homeowner agreed to be bound by the Association's "duly enacted rules, regulations and by-laws." Our case law confirms the contractual nature of the relationship between HOAs and their members. *See Queen's Grant II Horizontal Prop. Regime v. Greenwood Dev. Corp.*, 368 S.C. 342, 361, 628 S.E.2d 902, 913 (Ct. App. 2006) (holding real covenants are " 'agreement[s] ... to do, or refrain from doing, certain things with respect to real property' " (alteration in original) (quoting 20 Am. Jur. 2d *Covenants, Conditions, and Restrictions* § 1 (2005))); *id.* ("[C]ovenants, 'in a sense are contractual in nature and bind the parties thereto in the same manner as would any other contract.' " (quoting 20 Am. Jur. 2d *Covenants, Conditions, and Restrictions* § 1 (2005))).

Further, the bylaws, as amended in 2004, authorize the Association to impose fines on members for covenant violations.[4] Moreover, the Association's "Rules and Regulations," as amended, notify members of the procedures for imposition of fines and the maximum fine that may be imposed. *See* 6 Am. Jur. 2d *Associations and Clubs* § 31 (2008) (stating that association fines for member violations "must ... be determined according to some method to which the member has agreed, at least impliedly, by joining the association, not only as to the imposition of the fine but also as to the maximum amount thereof"); 7 C.J.S. *Associations* § 62 (2015) (footnote omitted) ("The liability of a member of an association for ... fines and penalties[ ] depends on his or her contract with the association as embodied in its articles of association or constitution and bylaws."). Therefore, the Association had the contractual authority to fine Homeowner.

We find no merit to Homeowner's argument that the restrictive covenants do not authorize the imposition of fines. The restrictive covenants require Homeowner to become a member of the Association and to abide by the Association's rules, regulations, and bylaws. These rules, regulations, and bylaws, which in turn authorize the imposition of fines, also constitute the contract between the Association and its members. Therefore, the restrictive covenants indirectly authorize the imposition of fines.

Homeowner also argues the fines were unenforceable contractual penalties because they were not "based upon contemplated actual damages" and they were intended to provide punishment for the breach. We disagree.

"Parties to a contract may stipulate as to the amount of liquidated damages owed in the event of nonperformance." *Foreign Acad. & Cultural Exch. Servs., Inc. v. Tripon*, 394 S.C. 197, 204, 715 S.E.2d 331, 334 (2011) (quoting *Lewis v. Premium Inv. Corp.*, 351 S.C. 167, 172, 568 S.E.2d 361, 363 (2002)); *see also Multiple Listing Serv. of Jackson, Inc.*, 390 So. 2d at 986 (dictum) (stating a "fixed, reasonable fine, *in the nature of liquidated damages*" for damages sustained by a professional association due to "unprofessional or unethical conduct would be sustained" (emphasis added)); *Commc'ns Workers of Am. Local 7400 v. Abrahamson*, 422 N.W.2d 547, 553–54 (Neb. 1988), *abrogated on other grounds*, (recognizing the contractual relationship between a labor union and one of its members and upholding the union's fine on the member as liquidated damages enforceable by the courts because the fines were based on a reasonable calculation and the actual damages from the member's violation were impossible to ascertain).

**\*4** "Where, however, the sum stipulated is plainly disproportionate to any probable damage resulting from breach of contract, the stipulation is an unenforceable penalty." *Foreign Acad. & Cultural Exch. Servs., Inc.*, 394 S.C. at 204, 715 S.E.2d at 334 (quoting *Lewis*, 351 S.C. at 172, 568 S.E.2d at 363). "If a clause is held to be a penalty, the plaintiff may still recover any actual damages that can be proved to have resulted from the breach." *Foreign Acad. & Cultural Exch. Servs., Inc.*, 394 S.C. at 204, 715 S.E.2d at 334 (citing *Tate v. Le Master*, 231 S.C. 429, 442, 99 S.E.2d 39, 46 (1957)). "The question of whether a sum stipulated to be paid upon breach of a contract is liquidated damages or a penalty is one of construction and *is generally determined by the intention of the parties*." *Moser v. Gosnell*, 334 S.C. 425, 431, 513 S.E.2d 123, 126 (Ct. App. 1999) (emphasis added).

Here, the language of the fine structure in the Association's Rules and Regulations indicates the Association is primarily concerned with abating the effects of a violation on the Spring Valley community in a manner that will save significant litigation costs for all parties involved. The following language in the fine structure not only provides over two weeks to correct the violation but also designates a reasonable maximum amount that may be imposed as a fine:

Brown v. Spring Valley Homeowners Association, Inc., Not Reported in S.E. Rptr. (2016)

Case 1:20-cv-00486-XR   Document 45-2   Filed 02/12/21   Page 5 of 8

a) The owner shall be informed by mail by [the Association's] General Manager of any violations of the Deed Restrictions, [the Association's] Rules and Regulations, and Richland County Ordinances. The owner is expected to work in good faith with the General Manager to correct the violation *within fifteen (15) days*.

b) The board has the right to fine the owner $100.00 weekly, *until abatement*, or the fine reaches $1,500.00 per violation[,] per year after the [fifteen-day] written notice to correct the violation. If a property has three (3) or more occurrences of the same violation during the same calendar year, a $100.00 fine will be levied immediately upon the third occurrence and any recurrence during that year. Additionally, if the violation is not corrected within one week, then the $100.00 weekly fine schedule will be implemented *until abatement* or the fines reach $1,500 per year, per violation.

c) *With board approval, the owner may be sued to correct the violation*.

d) *If the owner does not correct the violation, the board can elect to assess the owner based on the estimated cost to correct the violation*.

(emphases added).

We acknowledge the term "fine" employed by the Association is synonymous with the term "penalty." *See* http://www.merriam-webster.com/dictionary/FINE (last visited June 3, 2016) (providing in definition 3(a) "a sum imposed as punishment for an offense" and in definition 3(b) "a forfeiture or penalty paid to an injured party in a civil action"). However, this word choice should not control the analysis. When we compare the maximum amount that may be imposed as a fine, $1,500 per year, per violation, with the damages the Association is likely to sustain from a violation, the language of the fine structure resembles a liquidated damages provision rather than a penalty. For example, in the present case, the Association has alleged in its counterclaim that it was damaged by Homeowner's violation because (1) the "For Sale" sign diminished property values in the Spring Valley Subdivision and (2) the Association had to pay an attorney to collect the fine.[5]

**\*5** We conclude the $1,500 per year, per violation maximum fine represents a reasonable, if not modest, estimate of the damages likely to be sustained by the Association from a violation, primarily due to attorney's fees but also any possible diminution in value of the subdivision's homes. Pursuant to the subdivision's restrictive covenants, the Association could choose to initiate an action for an injunction in lieu of imposing a fine,[6] and the attorney's fees and costs for such an action would likely exceed the $1,500 maximum fine. In sum, the fine structure is not " 'disproportionate to any probable damage resulting from breach of contract,' "[7] and it demonstrates an intent to compensate for a violation's effects on the Spring Valley Community. *See Moser*, 334 S.C. at 431, 513 S.E.2d at 126 ("The question of whether a sum stipulated to be paid upon breach of a contract is liquidated damages or a penalty is one of construction and is generally determined by *the intention of the parties*." (emphasis added)). Therefore, the fine structure does not constitute an unenforceable penalty.

Finally, Homeowner argues the imposition of fines by HOAs against their members violates public policy, stating, "It is the public policy of this state that only the government has the power to levy a fine." Homeowner cites section 16–17–735(E)(3) of the South Carolina Code (2015) in support of this proposition. This statute criminalizes the impersonation of a government official or assertion of authority of law in connection with the use of "sham legal process." The Association's imposition of fines is not an unlawful assertion of authority and does not violate section 16–17–735(E)(3). Further, the lawful adoption of a reasonable, low-cost mechanism to enforce restrictive covenants does not violate public policy in general.

Based on the foregoing, we affirm the circuit court's conclusion that as a matter of law, the Association has the authority to impose fines on its members for violations of the restrictive covenants.

## II. Restraint on Alienation

We affirm the circuit court's conclusion that the Association's prohibition against "For Sale" signs does not constitute an invalid restraint on alienation pursuant to Rule 220(b), SCACR, and the following authorities: *Wise v. Poston*, 281 S.C. 574, 579,

Brown v. Spring Valley Homeowners Association, Inc., Not Reported in S.E. Rptr. (2016)

Case 1:20-cv-00486-XR   Document 45-2   Filed 02/12/21   Page 6 of 8

316 S.E.2d 412, 415 (Ct. App. 1984) ("Under South Carolina common law, any *unreasonable* limitation upon the power of alienation is against public policy and must be construed as having no force and effect." (emphasis added)); *id.* ("An *absolute* restraint upon the free and unlimited power of alienation, annexed to a grant or devise in fee simple is void." (emphasis added)); *see Godley Park Homeowners Ass'n, Inc. v. Bowen*, 649 S.E.2d 308, 311 (Ga. Ct. App. 2007) (holding that opinions cited by a homeowner in support of her argument that a prohibition on "For Sale" signs was a restraint on alienation were "inapposite as each case turned on that which was deemed an *absolute* restraint on alienation" (emphasis added)).

**III. Slander of Title**

Homeowner asserts the circuit court erred in granting summary judgment to the Association on his slander of title claim. Specifically, he argues (1) the Association did not have the authority to record a lien against his property for the unpaid fine, and, thus, its wrongful recording of the purported lien was actionable as slander of title; (2) the Association's business-judgment-rule defense has no application to this case;[8] and (3) he may recover nominal damages or his attorney's fees as damages. We will address these arguments in turn.

**\*6** "Wrongfully recording an unfounded claim against the property of another generally is actionable as slander of title." *Huff v. Jennings*, 319 S.C. 142, 149, 459 S.E.2d 886, 891 (Ct. App. 1995). In *Huff*, this court applied the following elements for slander of title to the facts of that case: "(1) the publication (2) with malice (3) of a false statement (4) that is derogatory to plaintiff's title and (5) causes special damages (6) as a result of diminished value of the property in the eyes of third parties." *Id.* For these elements, the *Huff* court relied on the treatment given to the Restatement (Second) of Torts §§ 623A, 624 (Am. Law Inst. 1977) by West Virginia's Supreme Court of Appeals in *TXO Production Corp. v. Alliance Resources Corp.*, 419 S.E.2d 870, 879 (W. Va. 1992), *aff'd*, 509 U.S. 443 (1993), *modified on other grounds by State v. McGinnis*, 455 S.E.2d 516 (W. Va. 1994) *and Alkire v. First National Bank of Parsons*, 475 S.E.2d 122 (W. Va. 1996). *Id.* Section 624 of the Restatement provides,

> The rules on liability for the publication of an injurious falsehood stated in § 623A apply to the publication of a false statement disparaging another's property rights in land, chattels or intangible things, that the publisher should recognize as likely to result in pecuniary harm to the other through the conduct of third persons in respect to the other's interests in the property.

Here, the Association's act of recording a lien against Homeowner's property for unpaid fines constituted the publication of a false statement for purposes of slander of title. The restrictive covenants provide that any unpaid *periodic assessments* for maintenance and repair of common areas "shall constitute a lien upon [a member's] property." However, there is no similar provision for unpaid fines in any of the Association's governing documents. Hence, the Association did not have the authority to record the purported lien against Homeowner's property for unpaid fines. Further, the Association may not use the business judgment rule as a defense because this rule "only applies to intra vires acts, not ultra vires ones." *Baumann*, 380 S.C. at 138, 668 S.E.2d at 424; *see id.* ("Acts beyond the scope of a corporation's powers as defined by law or its charter are ultra vires." (quoting *Lovering v. Seabrook Island Prop. Owners Ass'n*, 289 S.C. 77, 82, 344 S.E.2d 862, 865 (Ct. App. 1986))).

Nonetheless, neither nominal damages nor Homeowner's attorney's fees in this particular case qualify as special damages for purposes of slander of title. "Special damages recoverable in a slander of title action are the pecuniary losses that result 'directly and immediately from the effect of the conduct of third persons, including impairment of vendibility or value caused by disparagement, and the expense of measures *reasonably necessary* to counteract the publication, including litigation.' " *Huff*, 319 S.C. at 150–51, 459 S.E.2d at 892 (emphasis added) (quoting 50 Am. Jur. 2d *Libel & Slander* § 560). Similarly, section 633 of the Restatement sets forth the following specific requirements for the pecuniary loss:

> (1) The pecuniary loss for which a publisher of injurious falsehood is subject to liability is restricted to
>
> (a) the pecuniary loss that results directly and immediately from the effect of the conduct of third persons, including impairment of vendibility or value caused by disparagement, and
>
> (b) the expense of measures reasonably necessary to counteract the publication, including litigation to remove the doubt cast upon vendibility or value by disparagement.

Brown v. Spring Valley Homeowners Association, Inc., Not Reported in S.E. Rptr. (2016)

Case 1:20-cv-00486-XR   Document 45-2   Filed 02/12/21   Page 7 of 8

   (2) *This pecuniary loss may be established by*

   ***7*** *(a) proof of the conduct of specific persons, or*

   *(b) proof that the loss has resulted from the conduct of a number of persons whom it is impossible to identify.*
(emphasis added).

Read as a whole, section 633 requires special damages, including litigation expenses, to be the direct and immediate result of the influence of the publication upon the conduct of third persons. Two of the comments to section 633 are particularly instructive. Comment (g) states, in pertinent part:

   Even when the plaintiff claims that the publication has prevented him from finding any purchaser at all for his land or other things, he does not ordinarily make out his case by proving that after the publication[,] he was unable to sell. The possibility remains that he would not have been able to sell even without the publication. Normally, therefore, he must establish his case by evidence that *some specific person was substantially influenced by the publication in refusing to make a purchase that he otherwise would have made*.

(emphasis added). Further, the comment on Clause (1)(b) states, in pertinent part: "The rule stated is not, however, limited to the expense of bringing an action. It applies equally to the expense of defending one, *if the action is the direct and immediate result of the influence of the publication upon the conduct of third persons*." (emphasis added). This reading of section 633 is also well illustrated in *Huff*, in which the court concluded, "Jennings's lien clearly diminished the value of the property in the eyes of a third party, given that Huff was *required* to discharge the lien *before he could complete the refinancing of the property*." 319 S.C. at 150, 459 S.E.2d at 891 (emphases added).

Here, Homeowner's attorney's fees were not "reasonably necessary to counteract the publication." *Id.* at 150–51, 459 S.E.2d at 892 (quoting 50 Am. Jur. 2d *Libel & Slander* § 560). The Association removed its purported lien, and in the interim, Homeowner was not required to discharge the lien as a result of the conduct of a third person. We acknowledge Homeowner's citation to *Solley v. Navy Federal Credit Union, Inc.*, 397 S.C. 192, 723 S.E.2d 597 (Ct. App. 2012). However, unlike the present case, the unique circumstances in *Solley* made the homeowner's litigation expenses reasonably necessary. *Id.* at 210–11, 723 S.E.2d at 606–07.

In sum, an essential element of Homeowner's slander-of-title claim is missing. *See Huff*, 319 S.C. at 149–51, 459 S.E.2d at 891–92 (requiring special damages as an element of a claim for slander of title and defining special damages as the pecuniary losses resulting from the effect of the conduct of third persons). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof." *Hansson v. Scalise Builders of S.C.*, 374 S.C. 352, 357, 650 S.E.2d 68, 71 (2007) (ellipsis omitted) (quoting *Baughman v. Amer. Tel. & Tel. Co.*, 306 S.C. 101, 116, 410 S.E.2d 537, 545–46 (1991)). Therefore, we affirm the circuit court's grant of summary judgment to the Association on Homeowner's claim for slander of title.

**IV. UTPA**

***8** We affirm the circuit court's granting of summary judgment to the Association on Homeowner's UTPA claim pursuant to Rule 220(b), SCACR, and the following authorities: S.C. Code Ann. § 39–5–20(a) (1985) ("Unfair methods of competition and unfair or deceptive acts or practices *in the conduct of* any trade or commerce are hereby declared unlawful." (emphasis added)); S.C. Code Ann. § 39–5–10(b) (1985) (defining "trade" and "commerce" as "the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this State.").

**AFFIRMED.**

Brown v. Spring Valley Homeowners Association, Inc., Not Reported in S.E. Rptr. (2016)

Case 1:20-cv-00486-XR   Document 45-2   Filed 02/12/21   Page 8 of 8

HUFF, KONDUROS, and GEATHERS, JJ., concur.

**All Citations**

Not Reported in S.E. Rptr., 2016 WL 3595791

Footnotes

| | |
|---|---|
| 1 | The Association asserts Homeowner's argument that the restrictive covenants do not authorize the imposition of fines is not preserved for review because it was not listed in Homeowner's Statement of Issues on Appeal. *See* Rule 208(b)(1)(B), SCACR ("Ordinarily, no point will be considered [that] is not set forth in the statement of the issues on appeal."). We agree with Homeowner that the first issue listed in his Statement of Issues on Appeal fairly encompasses his argument that the restrictive covenants do not authorize the imposition of fines. Therefore, we find this argument preserved and proceed to address its merits. *See Atl. Coast Builders & Contractors, LLC v. Lewis*, 398 S.C. 323, 333, 730 S.E.2d 282, 287 (2012) (Toal, C.J., concurring in result in part and dissenting in part) ("[W]here the question of preservation is subject to multiple interpretations, any doubt should be resolved in favor of preservation."). |
| 2 | While the question of the authority of a homeowners' association (HOA) to fine its members has never been squarely before our appellate courts, our case law indicates a significant history of HOAs fining their members. *See River Hills Prop. Owners Ass'n, Inc. v. Amato*, 326 S.C. 255, 258–59, 487 S.E.2d 179, 180 (1997) (noting the architectural review board of a HOA imposed fines on homeowners for continuing construction of a pool and fence after the board advised the homeowners to stop construction); *Seabrook Island Prop. Owners' Ass'n v. Berger*, 365 S.C. 234, 239, 616 S.E.2d 431, 434 (Ct. App. 2005) (quoting the trial court's summary of a HOA's protective covenants that included "sanctions for violations"). |
| 3 | *See* S.C. Code Ann. § 27–31–20(c) (2007) (defining "condominium ownership" as "the individual ownership of a particular apartment in a building and the common right to a share, with other co-owners, in the general and limited common elements of the property"). |
| 4 | Despite the fact that the bylaws were amended in 2004, Homeowner received a *2003* "Information Guide" containing the Association's rules, regulations, and bylaws when he purchased his property on August 31, 2007. Therefore, he was not then aware that the 2004 amendment authorized the Association to fine members for certain covenant violations. However, Homeowner received notice of the Association's November 12, 2007 and November 9, 2010 meetings, and these notices indicated the Association's members would vote on changes to the bylaws. These changes involved, among other things, fines for covenant violations. Further, members of the Association were given copies of the amended bylaws as they were adopted. Moreover, in 2010, the Association began posting the most recent rules, regulations, and bylaws on the Association's website, which has been available to the general public. Therefore, Homeowner had ample notice of the 2004 amendment prior to the events in question. |
| 5 | While the Association's governing documents do not provide for the direct collection of attorney's fees from a member who has violated a covenant, Article V, section 3, of the bylaws authorizes the use of regular assessments for the Association's "enforcement of [its] rights," among other things. Therefore, all members, including the violating member, will likely face a higher regular assessment against their property after the Association has incurred litigation costs to abate a violation. |
| 6 | The 1979 deed to Homeowner's predecessor in title indicates the Association has the right to enforce the restrictive covenants "by injunction or any other appropriate legal action." |
| 7 | *Foreign Acad. & Cultural Exch. Servs., Inc.*, 394 S.C. at 204, 715 S.E.2d at 334 (quoting *Lewis*, 351 S.C. at 172, 568 S.E.2d at 363). |
| 8 | The business judgment rule, as applied to HOAs, states, "In a dispute between the directors of a homeowners association and aggrieved homeowners, the conduct of the directors should be judged by the 'business judgment rule' and absent a showing of bad faith, dishonesty, or incompetence, the judgment of the directors will not be set aside by judicial action." *Baumann v. Long Cove Club Owners Ass'n, Inc.*, 380 S.C. 131, 138, 668 S.E.2d 420, 424 (Ct. App. 2008) (quoting *Goddard v. Fairways Dev. Gen. P'ship*, 310 S.C. 408, 414, 426 S.E.2d 828, 832 (Ct. App. 1993)).<br><br>The Association maintains that Homeowner's argument concerning the business judgment rule is not preserved for review because it was not listed in Homeowner's Statement of Issues on Appeal. We find the third and fourth issues listed in Homeowner's Statement of Issues on Appeal, combined with Homeowner's argument in his brief, adequately raise the issue of the business judgment rule as a defense. *See Atl. Coast Builders*, 398 S.C. at 333, 730 S.E.2d at 287 (Toal, C.J., concurring in result in part and dissenting in part) ("[W]here the question of preservation is subject to multiple interpretations, any doubt should be resolved in favor of preservation."). |

End of Document                                   © 2021 Thomson Reuters. No claim to original U.S. Government Works.